## DANIEL R. BUDD, ADMINISTRATOR, *vs.* THE MERIDEN ELECTRIC RAILROAD COMPANY.

Third Judicial District, Bridgeport, April Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A plea in abatement for defective service is not entitled to favor. Its allegations must be certain, positive, and direct, and cannot be aided by intendment or inference.

In an action by an executor or administrator, under § 1008 of the General Statutes, for personal injuries resulting in death, the complaint will not be held insufficient if it omits to aver the existence of legal heirs, since the law ordinarily presumes their existence.

The statutory notice of an injury required to be given to a defendant prior to suit, is not a pleading, and the plaintiff is not limited in his proof to the specifications of negligence contained therein.

A city ordinance provided that no person should play in the streets so as to interfere with their free, safe and convenient use by travelers. *Held* that such an ordinance could not affect a child only twenty-one months old, nor lessen or modify the duty of a motorman of an electric car to exercise due care towards such a child alone in the street.

The declaration of the mother of a child injured by an electric street railway company, made shortly after the accident, that she did not blame the motorman, is irrelevant in an action against the company for negligence in causing the death of such child.

If irrelevant testimony is admitted in favor of one party and against the objection of the other, the former cannot complain if the latter is afterwards permitted to introduce like testimony in contradiction.

[Argued April 20th—decided June 15th, 1897.]

ACTION to recover damages for negligence in causing the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and heard in damages to the court, *Shumway, J. ;* facts found and judgment rendered for the plaintiff for $1,500, and appeal by the defendant for alleged errors in the rulings of the court.   *No error.*

The defendant filed the following plea in abatement : " The defendant pleads in abatement because said writ was not otherwise served upon it than by the officer leaving a copy of said writ and complaint in the hands of W. C. Gray, a resident director of said Meriden Electric Railroad Company, in the office of said company within the town of Meriden, instead of with or at the usual place of abode of Thomas W. Crockett, of the town of Meriden, County of New Haven, and State of Connecticut, cashier of the defendant.   And therefore the defendant prays judgment."

The plaintiff demurred to this plea because: " 1. There is no allegation therein that said W. C. Gray, upon whom said service was made, was not a person upon whom such service might have been made at the time of such service. 2. There is no allegation therein that at the time when said writ was served the said Thomas W. Crockett was a resident of the State of Connecticut, or that at said time he was the cashier of the defendant."

The trial court found these facts: " 2. The plaintiff was and is administrator, as alleged in said complaint, and the allegations of paragraphs 1, 2, 5, 6 and 7 are found true, except as may be modified by this finding. 3. And the court further finds that the deceased, Mizee E. Budd, at the time of her death was a child twenty-one months of age, and that she was on the 30th day of August, 1895, at about the hour of four o'clock in the afternoon run over by one of the electric cars of the defendant corporation in the public highway, and died about three hours after such injuries were received, and in consequence thereof.   4. Said deceased had no brother or sister living at the time of her death, but a child was born to her parents within nine months after her

death. Said child was born on May 27th, 1896. 5. Said
Mizee was of ordinary intelligence for a child of her age, and
could walk, toddle, or run alone, but not faster than the or-
dinary walking pace of a woman. 6. The place where the
accident happened was on Pratt street, and substantially at
the time and place stated in the notice to the defendant cor-
poration of such accident, and at a point about 120 feet north
of the corner of Camp and Pratt streets in said city. There
was no cross-walk at the place of the accident: the nearest
cross-walk is at the intersection of Pratt and Camp streets.
7. At the corner of Pratt and Camp streets Pratt street makes
a turn towards the north, and the car tracks curve at that
point; but such curve was not great enough to obstruct or
impede the view of the motorman, and there was nothing to
prevent, impede, or obstruct the motorman in charge of the
car from a full and unobstructed view, for a long distance
before said curve was reached and until the time of the acci-
dent, of the place and of the entire highway at the point where
the accident took place. 8. Upon the afternoon when the
child was killed, after dinner, the child was put to bed and
had an afternoon nap, waking about three o'clock, and there-
upon was washed and dressed by her mother, and permitted
to go into the back-yard in the custody of her aunt Louisa, a
girl of about twelve years of age, a competent person to
take charge of such child. 9. This back-yard was separated
from Pratt street by an open and vacant lot of the depth of
about 130 feet, and between the said back-yard and said open
and vacant lot was a board fence, the boards of said fence
running horizontally or parallel with the level of the ground,
and were about six inches apart, and the fence was between
$3\frac{1}{4}$ and 4 feet high. 10. There was a gate in said fence, which
gate was securely fastened on the day in question. 11. At
one side of the gate and some little distance therefrom there
was a small hole under the fence, through which the deceased
escaped from said back-yard and passed across said vacant
lot and down onto Pratt street, and said hole was obscured
from ordinary observation by a growth of vegetation. The
mother of the deceased knew of the existence of the hole, and

also knew that the child had left the yard by crawling through this hole on one or two occasions before the day of the accident. 12. Directly before the child so escaped, she, with her aunt, was playing at the foot of said back-yard, and the grandmother of the deceased child called her daughter, directing her to come into the house, and the aunt, obeying her mother, left the child and went into the house. 13. The mother of the child and the grandmother lived in the same yard, but in separate houses, and the mother did not know that Louisa had left her child alone. 14. The grandmother of the deceased child when she called her daughter into the house did not know that the child was playing in the garden under her care. 15. Directly after the child was so left alone she escaped by passing under the fence, as aforesaid, and by crossing said vacant lot, and passed directly onto Pratt street, and in a few minutes thereafter met her death by being run over by said electric car. 16. The exact distance on Pratt street from said open lot to the place where the child was killed did not appear, but it was from one half to two thirds the distance of one side of the same block. 17. The circumstances immediately surrounding the accident are as follows : The car was coming up Pratt street and as it approached the turn at the corner of Camp and Pratt streets the motorman slowed down to pass around the curve, and having passed onto the curve and partially around it put on additional power to start the car up for its run through the straight level part of Pratt street to the end of the track further up Pratt street. 18. The said child was standing beside the east curb in the street, and as the car proceeded up Pratt street started to cross the street at nearly right angles, and as she passed onto the point between the rails was struck by the car, run over, and received injuries which caused her death. 19. A little before she passed onto the rails, and as the car was approaching, she raised her hands and uttered some exclamation. 20. From the time that the car was upon the curve until the car was within three or four feet of the child, the motorman was looking to one side and back towards the rear of his car, and not in the direction that the car was going, and in

consequence thereof did not observe the child until within three or four feet, and did not see the child until the child was upon the track, and until it was too late to do anything towards stopping the car or preventing it from running over and killing the child. After seeing the child upon the track the motorman did all in his power to stop the car; and it appeared that the car was equipped with proper appliances for that purpose. 21. The motorman when he was near the curve and before he started the car up by applying more power, saw the child standing in the street near the curb, as above stated. 22. There was a conductor upon said car on the rear end thereof. 23. The defendant corporation and the motorman were negligent in not seeing the deceased and stopping the car before it ran over and killed the child. 24. Pratt street is a street in which usually and commonly many children are found playing and passing along and crossing the same, and this was well known to the motorman and to the defendant corporation. 25. There was no contributory negligence on the part of the deceased. 26. The defendant operates a single track line on Pratt street, and at the time of the accident only one car ran thereon. 27. The car made regular trips from the square east of the steam railroad tracks on Main street out to the end of the line on Pratt street and back again. The distance from said square out to the end of the line is about 5,000 feet. 28. The car was due to run to the end of its route in 7½ minutes from said square. 29. The car was not equipped with any fender, or life-saving or protecting apparatus. 30. A man-guard had been upon the car in front of the wheels, but owing to some accident had been either broken or taken off. 31. The appliances for protecting life by the use of fenders and man-guards then in use were of some, but not of very great utility; but no attempt on the part of the defendant had been made by the use of fenders or man-guards to protect life, or persons upon the street from injury. 32. The time and place of the accident and the nature of the injuries inflicted are accurately stated in the complaint, except as modified in this finding. 33. The child suffered a severe shock by said injuries, and although

suffering pain did not suffer very greatly, but died from the effects of shock and the injuries so inflicted upon her. 34. The child was conscious and called for her mother and otherwise exhibited intelligence and consciousness from the time of the accident until shortly before her death."

Prior to the suit the plaintiff served the following notice on the defendant: " To the Meriden Electric Railroad Company, a railway corporation operating an electric railroad running through Pratt street in the town of Meriden, Connecticut:—

" Please take notice that Daniel R. Budd, of said Meriden, administrator of the estate of Mizee E. Budd, deceased, claims damages against said company for injuries inflicted upon the person of the said Mizee E. Budd, caused by the negligence of said corporation and its employees, resulting in the death of the said Mizee E. Budd. The injuries were inflicted on the 30th day of August, A. D. 1895, at about quarter past four o'clock in the afternoon, and at a place upon the railroad track of said corporation on Pratt street, about one hundred and ten feet northerly of the crosswalk at the intersection of Pratt and Camp streets in said Meriden. The cause of the injuries was that said corporation had negligently omitted and refused to equip and provide the electric car, which the said company was operating and propelling at said time and place, with any fender or other appliance for the safety of human life and limb, and the negligence and carelessness of the motorman in charge of said car in managing and operating said car, and in his allowing and causing said car to strike, throw down, and run over and upon said Mizee E. Budd, then an infant of the age of twenty-one months, while she was crossing said Pratt street, thereby injuring, mutilating, and crushing her, and causing her death. By said injuries both legs and both feet of the said Mizee E. Budd were crushed and broken, her right hip was crushed, and her perineum was cut open nearly to the spine, death resulting within three hours. The above claim and statement is made as nearly as the same can now be ascertained."

The defendant claimed that Mizee E. Budd, deceased, was

in the street in violation of an ordinance of the city of Meriden, which is as follows: "Sec. 28. No person shall within the limits of any street or highway in the city play any game of ball, or fly any kite or balloon, or throw any stones or other missiles, or engage in any other game or exercise which interferes with the free, safe, and convenient use of such street or highway by any person traveling or passing along the same."

The defendant appealed from the judgment of the trial court, alleging that it erred in the following particulars: "1. In sustaining the plaintiff's demurrer to the defendant's plea in abatement; 2, in overruling the defendant's claim that the complaint was defective as a complaint on the statute, because there was no averment that there is a husband or heirs at law, and that such a defect could be taken advantage of on a hearing in damages after default, and would prevent a recovery for more than nominal damages; 3, in overruling the defendant's claim that the plaintiff was limited in his recovery to the acts of negligence set out in his notice; 4, in overruling the defendant's claim that the alleged negligence of the motorman in not seeing the child and stopping the car before it ran over the child was not set out in the notice, and could not be considered by the court; 5, in overruling the defendant's claim that upon the facts the defendant was not guilty of negligence; 6, in overruling the defendant's claim that the child was in the street in violation of the by-law of the city of Meriden; 7, in overruling the defendant's claim that the fact that the motorman did not see the child in time to stop cannot be held to be negligence on the part of the defendant, in behalf of a person not rightfully on the track; 8, in overruling the defendant's claim that this child had no right to be playing, running, or exercising in the street; 9, in overruling the defendant's claim that the parents were negligent in their care of the child; 10, in overruling the defendant's claim that the parents were the beneficiaries in this case in event of any recovery, and as they were negligent in their care of the child, no recovery could be had for more than nominal damages; 11, in overruling the defendant's claim that the suit was for the benefit of the

negligent parents, and that therefore only nominal damages could be awarded ; 12, in overruling the defendant's claim that the parents were responsible for the negligence of the person in whose charge they had put the child."

The defendant also assigned as error the action of the court, " 13, in excluding the testimony of Mrs. Berry ; 14, in admitting the testimony of the witness who said she saw the motorman looking behind him, when it was shown that she did not refer to the time of the accident; 15, in admitting the testimony of the witness Johnson ; 16, in finding in paragraph 20, that from the time that the car was upon the curve until the car was within three or four feet of the child, the motorman was looking to one side and back towards the rear of his car and not in the direction that the car was going ; 17, in refusing to find the facts as requested in paragraph 19 of the defendant's request for a finding. The defendant therefore prays for such relief as is provided by law in the premises."

*Seymour C. Loomis*, for the appellant (defendant).

The court erred in sustaining the demurrer to the plea in abatement. Gen. Stats., §§ 908, 1000 ; *Cady* v. *Gay*, 31 Conn. 396. The plea alleges that the defendant had a cashier and that he was a resident of this State at the time that the attempted service was made. The language used is capable of no other reasonable construction than that at the time the writ was served it should have been upon Thomas W. Crockett, the cashier. *Walko* v. *Walko*, 64 Conn. 74 ; *Draper* v. *Moriarty*, 45 id. 479 ; *Wilcox* v. *Chambers*, 34 id. 180 ; *Gould* v. *Smith*, 30 id. 88 ; *Colburn* v. *Tolles*, 13 id. 524. The complaint was defective in that it contained no averment that there were heirs at law. Gen. Stats., § 1008 ; Tiffany on Death by Wrongful Act, § 80 ; *Leggett* v. *Gt. Nor. Ry.*, L. R. 1 Q. B. D. 607 ; *Bradshaw* v. *Lancashire Ry.*, L. R. 10 C. P. D. 189 ; *Chicago* v. *Major*, 18 Ill. 358 ; *Jeffersonville R. R.* v. *Hendricks*, 41 Ind. 74 ; *Stewart* v. *Terre Haute, etc., R. R.*, 103 id. 44 ; *Kansas Pac. Ry.* v. *Carter*, 16 Kan. 570 ; *Hartford & N. H. R. R.* v. *Andrews*, 36 Conn.

214; *Dickens* v. *N. Y. Cent. R. R.*, 23 N. Y. 160.    The court erred in overruling the defendant's claims that the defendant was not guilty of negligence; that the child was in the street in violation of the city by-law; that the fact that the motorman did not see the child in time to stop could not be held to be negligence in behalf of a person not rightfully on the track.    *Cit. St. Ry.* v. *Carey*, 56 Ind. 404; *Thomas* v. *Ry.*, 132 Pa. St. 513; *Meyer* v. *Lindell Ry.*, 6 Mo. App. 31; *Kenedy* v. *St. Louis R. R.*, 43 id. 5; *Funk* v. *Electric Co.*, 34 Atl. Rep. 861; *Fleishman* v. *Neversink R. R.*, ibid. 119; *Galbraith* v. *West End Co.*, 43 N. E. Rep. 501; *Nolan* v. *N. Y., N. H. & H. R. R.*, 53 Conn. 474, 476; *Daniels* v. *N. Y. & N. E. R. R.*, 154 Mass. 349; *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 218; *McKenna* v. *N. Y. Cent. R. R.*, 8 Daley, 304; *Felton* v. *Aubrey*, 74 Fed. Rep. 350; *Culbertson* v. *Crescent City R. Co.*, 20 South. Rep. 902.    The real plaintiffs in this case were negligent in their care of the child, and that prevents a recovery for more than nominal damages. Tiffany on Death by Wrongful Act, § 69; *B. & O. Ry.* v. *Pletz*, 61 Ill. App. 161; *Union Pac. Ry.* v. *Young*, 45 Pac. Rep. 580; *Pa. Co.* v. *James* 81* Pa. St. 202; *Smith* v. *Hestonville Ry.*, 92 id. 450; Whittaker on Neg., 517 (*n*); *Williams* v. *Texas R. R.*, 60 Tex. 205; Booth on St. Rys., § 391; *Cauley* v. *Pittsburg, etc., R. R.*, 95 Pa. St. 398; *Chicago* v. *Starr*, 42 Ill. 174; *Koons* v. *St. Louis & Iron Mt. R. R.*, 65 Mo. 595.    The court erred in excluding the testimony of Mrs. Berry.    The statement was an admission against interest, and was made by a party interested in the subject-matter of the suit.    The court erred in admitting the testimony of the witness who said she saw the motorman looking behind him, when it appeared that she was not referring to the time of the accident.

*Henry Stoddard* and *Roger S. Baldwin*, with whom was *Henry Dryhurst*, for the appellee (plaintiff).

The defendant having voluntarily appeared and moved for a hearing in damages, could not thereafter take advantage of any mere defect in the service of process.    *Fowler* v.

*Bishop*, 32 Conn. 208; *Hatstat* v. *Blakeslee*, 41 id. 303; *Haussman* v. *Burnham*, 59 id. 136; *St. Louis & S. F. R. R.* v. *McBride*, 141 U. S. 127; *Fitzgerald* v. *Fitzgerald*, 137 id. 98. Pleas of this nature are not favored by the courts, and require the utmost precision and certainty. Not only must the defect be pointed out, but the remedy distinctly and specifically stated. The plea does not state facts showing such service to be bad. Such allegations are essential. Nothing can be left to inference. *Ainsworth* v. *Dyer*, 2 Root, 202; *Wolcott* v. *Dwight*, 2 Day, 408; *Parsons* v. *Ely*, 2 Conn. 379; *Clark* v. *Warner*, 6 id. 359; *Beach* v. *Baldwin*, 9 id. 479, 481; 2 Swift's Digest, p. 611, 612. The complaint was not defective by reason of its failure to aver the existence of heirs. The statute creates no cause of action for the *death*. In assessing damages the basis of recovery is the personal suffering and injuries of the deceased up to the time of death, not the pecuniary loss suffered by the surviving relatives because of the death. *Murphy* v. *N. Y. & N. H. R. R.*, 29 Conn. 496; *Goodsell* v. *Hartford & New Haven R. R.*, 33 id. 56; *Pitkin* v. *N. Y. & N. E. R. R.*, 64 Conn. 487; *Lamphear* v. *Buckingham*, 33 id. 247. A contrary result in some States has followed from the construction of certain statutes closely resembling Lord Campbell's Act of England. *Blake* v. *Midland Ry. Co.*, 18 Q. B. 93. But the theory of the English statute is essentially different from ours. The *death* of the deceased under their statute creates a new cause of action. Damages are given as a compensation to the surviving relatives for the loss which they have suffered by the *death*. In States having statutes similar to our own, the courts have held that an allegation that there are persons capable of taking is not necessary, and that the court, in the absence of such allegation, will presume that there are next of kin. *Warner* v. *R. R. Co.*, 94 N. Car. 258; *Clark* v. *Manchester*, 62 N. H. 583; *Madden* v. *Ry. Co.*, 28 W. Va. 612; *Balt. & Ohio R. R.* v. *Wightman*, 29 Gratt. 441. The notice of injury was sufficient. Public Acts of 1895, Chap. 176; *Gardner* v. *New London*, 63 Conn. 272; *Brennan* v. *F. H. & W. Car Co.*, 45 id. 297. So far as the fifth reason of appeal attempts to

show that the trial court erred in holding that this defendant failed in fact to exercise that degree of care which was due under the circumstances, it presents no proper case for consideration. So far as it raises the question that the trial court held the defendant corporation to a higher degree of care than was justifiable, there is no foundation in the claim. In a dangerous situation ordinary care means great care. *Knowles* v. *Crampton*, 55 Conn. 344; *Dexter* v. *McReady*, 54 id. 172; *Bates* v. *N. Y. & N. E. R. R.*, 60 id. 269; *Baltimore Traction Co.* v. *Wallace*, 77 Md. 441; *Laufer* v. *Bridgeport Traction Co.*, 68 Conn. 475. For a driver of a wagon or horse car to look sideways toward stores, or to turn his face toward the inside of the car, is negligence. *Collins* v. *So. Boston R. R.*, 142 Mass. 312; *Commonwealth* v. *Metropolitan R. R.*, 107 id. 238; *Thompson* v. *National Express Co.*, 66 Vt. 360; *Levy* v. *Dry Dock R. R.*, 12 N. Y. Supp. 485; *Ehrman* v. *Brooklyn City R. R.*, 14 id. 336. This little child, 21 months old, was not violating any by-law of the city of Meriden. *Birge* v. *Gardiner*, 19 Conn. 512; *Daley* v. *Norwich & Worcester R. R.*, 26 id. 591; *Newman* v. *Phillippsburg Horse Car Co.*, 52 N. J. L. 446. The finding expressly declares that the parents were not negligent, and there is nothing which indicates that the parents failed to exercise reasonable care. If the parents had been negligent in permitting the child to escape from the yard, this act would not be the proximate cause of the injury, but merely a condition. *Isbell* v. *N. Y. & N. H. R. R.*, 27 Conn. 404; *Smithwick* v. *Hall & Upson Co.*, 59 id. 269; *Westfield* v. *Lewis*, 43 La. Rep. 66. Moreover, if the negligence of the parents had contributed to the injury, it would not defeat the right of recovery of the administrator under our statute. *Daley* v. *Norwich & Worcester R. R.*, 26 Conn. 591; *Weymore* v. *Mahaska Co.*, 78 Ia. 399; *Boland* v. *Missouri R. R.*, 36 Mo. 489; *Norfolk & W. R. R.* v. *Groseclose*, 88 Va. 267; *Cleveland, etc., R. R.* v. *Crawford*, 24 Ohio St. 641. But are the parents the beneficiaries in this suit? In Texas, under a similar statute, where a child was born over six months after the accident, the court held it was a survi-

vor and entitled to maintain an action by its next friend. *Nelson* v. *G., H. & S. A. Ry. Co.*, 78 Tex. 622; *Texas & P. Ry. Co.* v. *Robertson*, 17 Southwestern Reporter, 1041. See also *Thelluson* v. *Woodford*, 4 Ves. 321; *The George and Richard*, 24 Law Times, 718. The court did not err in its rulings upon testimony.

ANDREWS, C. J. There was no error in sustaining the demurrer to the plea in abatement. The service of the complaint by leaving a copy with a resident director was a good service, unless such circumstances existed as made it a defective one. The defendant, in order to have that service set aside, was in duty bound to point out in its plea in abatement the existence of those circumstances, by direct and positive averment. The defendant's plea did not do this. It may be true that the ancient rigor of pleading in abatement is not now insisted on. Courts do not now, in considering such a plea, "refuse to comprehend the ordinary import of language." *Draper* v. *Moriarty*, 45 Conn. 476, 479. But pleas in abatement are not favored. They must be certain, positive, and direct. They cannot be aided by intendment or inference.

In 1848 the legislature enacted (Public Acts of 1848, Chap. 5) that "no action to recover damages for injury to the person, . . . shall abate by reason of his death, but his executor or administrator may enter and prosecute the same, in the same manner as is now by law provided in regard to other actions. Sec. 2. Actions for injury to the person, whether the same do or do not result in death, . . . shall survive to his executor or administrator, *provided* the cause of action shall not have arisen more than one year before the death of the deceased." In 1853 it was enacted (Public Acts of 1853, Chap. 74, § 8) "that if the life of any person, being a passenger, or crossing upon a public highway in the exercise of reasonable care, shall be lost by the negligence or carelessness of any railroad company in this State, or by the unfitness, or negligence, or carelessness of their servants or agents, such railroad company shall be liable to pay damages, not exceeding five thousand dollars nor less than one thou-

sand dollars, to the use of the executor or administrator of the deceased person, to be recovered by such executors or administrators in an action on the case upon this statute, for the benefit of the husband or widow and heirs of the deceased person, one moiety thereof to go to the husband or widow, and the other to the children of the deceased, but, if there shall be no children, the whole to the husband or widow, and if no husband or widow, to the heirs according to the law regulating the distribution of intestate personal estate."

These two statutes are now brought together in § 1008 of the General Statutes, on which statute this suit was brought. The main difference between the section last named, and the statute of 1853, is that the law as it now exists is not limited to injuries inflicted by a railroad company, but includes all injuries resulting in death.

From these statutes it is evident that three things have been effected: first, the cause of action which existed in the deceased person is kept alive; the rule of law that all personal actions died with the person, has been set aside as to these cases. Second, to limit the extent of the damages which may be recovered for such an injury; and third, to direct the distribution of the sum recovered. The sum recovered is ordered to be paid to certain relatives in specified proportions, and if there are no such relatives, then to the heirs of the deceased as intestate estate, excluding creditors. The statute, then, is as well a statute of distributions. *Murphy* v. *N. Y. & N. H. R. R.*, 29 Conn. 496; *Goodsell* v. *H. & N. H. R. R.*, 33 id. 51; *Waldo* v. *Goodsell*, ibid. 432; *Lamphear* v. *Buckingham*, ibid. 237; *Hartford & N. H. R. R.* v. *Andrews*, 36 id. 213.

As these statutes give the right to sue, to the executor or administrator, and direct in what way the sum recovered is to be distributed, it is obvious that a suit upon the statute may be brought by the executor or administrator, without naming the heirs, or even averring that there are any. The law ordinarily will presume that a deceased person has heirs. *Pitkin* v. *N. Y. & N. E. R. R.*, 64 Conn. 482, 487; *Warner* v. *Western N. C. R. R.*, 94 N. Car. 250, 258; *Balto. & O. R.*

*R.* v. *Wightman's Adm'r*, 29 Gratt. 431, 441; *Madden* v. *C. & O. R. R.*, 28 W. Va. 610, 612.

The plaintiff was not limited in his proof, to those specifications of negligence mentioned in his notice of the injury given to the defendant, pursuant to the statute. The notice is not a pleading. The object of such a notice is to put the officers of the corporation charged with the duty of investigating the claim made upon it, in possession of such facts as will enable them to perform that duty understandingly. *Shaw* v. *Waterbury*, 46 Conn. 263; *Biesiegel* v. *Seymour*, 58 id. 43, 52; and as to the "nature" of the injury, the notice is sufficient if it gives a general description which will reasonably apprise the defendant of its general character. *Brown* v. *Southbury*, 53 Conn. 212; *Lilly* v. *Woodstock*, 59 id. 219; *Gardner* v. *New London*, 63 id. 267, 272. The sufficiency of the notice is to be tested with reference to the purpose for which it is required. If sufficient for that purpose it is a good notice.

The fifth, ninth, sixteenth and seventeenth reasons of appeal present no questions of law, only questions of fact.

The sixth, seventh and eighth reasons are predicated on the city ordinance, which appears in the statement. A child only twenty-one months old cannot be affected by any such ordinance; and it is certain that the duty of the motorman to use care towards such a child, alone in the streets, is not and cannot be lessened or modified by that ordinance.

As it is found specifically that the parents of the said Mizee were not negligent, the tenth, eleventh and twelfth reasons present no question. There was no negligence to be imputed to the deceased, and there was no negligence from which her parents could in any way derive advantage.

The defendant offered as a witness a Mrs. Berry, and claimed she would testify that in a conversation she had with the mother of the said Mizee, shortly after the accident which resulted in the death of Mizee, she, the mother, stated that she did not blame the motorman. On objection this testimony was ruled out, and, we think, properly. Whether the mother blamed the motorman, or did not blame him, was an irrele-

vant fact.   Her belief that the motorman was blameworthy, would not in any way tend to make the defendant liable in this action ; and a contrary belief would not tend in any degree to show that the defendant was not liable.

The defendant called witnesses and claimed to have proved by their testimony that the motorman of the car which ran over the deceased was a careful motorman and a careful man generally.   This testimony was objected to by the plaintiff, but admitted by the court.   In reply to this testimony the plaintiff called a witness who stated that she had seen the motorman looking backwards when the car was in motion. To this statement the defendant objected, but the court admitted it.   It seems to us that the testimony offered by the defendant was not admissible; *Morris* v. *East Haven*, 41 Conn. 252; *Bassett* v. *Shares*, 63 id. 39, 46 ; so that the evidence offered by the plaintiff did no harm.   If the evidence offered by the defendant was admissible, it was certainly open to the plaintiff to contradict it.

The testimony of the witness Johnson falls within the rule here given.   It was offered to offset and contradict the testimony on the part of the defendant.

There is no error.

In this opinion the other judges concurred.