PAQUIN, LIMITED, *vs.* JOHN CORLEY WESTERVELT.

Third Judicial District, Bridgeport, April Term, 1919.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

Section 5275 of the General Statutes, which formed part of the Married Women's Act of 1877, provides that both husband and wife shall be liable for articles purchased by either which have in fact gone "to the support of the family, or for the joint benefit of both, or for the reasonable apparel of the wife, or for her reasonable support, while abandoned by her husband." As originally enacted this provision did not contain the final comma, which was inserted by the revisers in the Revision of 1888. *Held* that under these circumstances the more rational construction was to disregard the last comma, and thus avoid making the husband's liability for his wife's "reasonable apparel" dependent upon his abandonment of her,—a result clearly not intended by the framers of the Act.

The statute imposes the obligation of support as an incident of the *status* created by the marriage, but it is not concerned either with the place in which the required support is furnished or the place in which the articles purchased are used or consumed. Accordingly, a husband domiciled and living with his wife in this State is jointly liable with her for her "reasonable apparel" purchased and used by her in a foreign country while temporarily there.

There is no reason why the statutory remedy should not be as available to a foreign creditor as to a creditor of our own State.

The word "support," as used in the statute, includes everything which goes to the sustenance and maintenance of the family; and "family" includes the wife, in the absence of anything to show a contrary intent.

A vendor's right of recovery under the statute is not limited to necessaries or things reasonable, if the articles purchased go in fact to the family support.

Argued April 10th—decided June 11th, 1919.

ACTION to recover a balance due for wearing apparel furnished to the defendant's wife for her personal use, brought to and tried by the Superior Court in Fairfield County, *Haines, J.;* facts found and judgment rendered for the plaintiff for $863, and appeal by the defendant. *No error.*

Plaintiff is an English corporation located in London, England, and sues the defendant for wearing apparel and merchandise sold his wife, while she was temporarily in London. These purchases were charged to her account, were reasonable and necessary apparel for the wife, and, in that sense, were for the benefit and support of the family of the defendant.

During the period of these purchases Mr. and Mrs. Westervelt were living together as husband and wife, and domiciled at Ridgefield, Connecticut.

The defendant furnished during this period his wife with a liberal amount of cash for her use on account of the trips to Europe.

These were reasonable purchases by a wife whose husband was maintaining her in the station this defendant was maintaining his wife.

*David S. Day* and *Philo C. Calhoun*, for the appellant (defendant).

*Nehemiah Candee* and *John T. Dwyer*, for the appellee (plaintiff).

WHEELER, J. The sales of merchandise for which recovery is sought were made in England to the wife of a resident of Connecticut while temporarily abroad, and were for her individual use. Husband and wife, during the period of these purchases, were living together as husband and wife in Connecticut. The action is brought upon the implied promise, which the statute (Revision of 1918, § 5275) raises from the beneficial use by the wife of the goods purchased. *Buckingham* v. *Hurd,* 52 Conn. 404, 406; *Fitzmaurice* v. *Buck,* 77 Conn. 390, 391, 59 Atl. 415.

The Married Women's Act of 1877 included a provision designed for the protection of those dealing with

married persons. That part of § 5275, from which the implied promise must arise in order to sustain the action, reads as follows: "and both shall also be liable when any article purchased by either shall have in fact gone to the support of the family, or for the joint benefit of both, or for the reasonable apparel of the wife, or for her reasonable support, while abandoned by her husband."

The only changes in this part of this section since its passage in 1877, are the insertion of "also" in line one, and the substitution of "when" for "where" in that line and the insertion of a comma after "support" and before "while." The presence of this comma raises a question as to whether the abandonment of the husband did not apply to the "reasonable apparel" of the wife as well as the "reasonable support." But when we find the original provision of 1877 omits this comma, it is clear that the framers of the Act intended the abandonment of the husband to apply only to the reasonable support. The insertion of the comma occurs first in the Revision of 1888, and came quite likely through accident rather than design. We think it the more reasonable construction to disregard the comma.

These purchases were found to have been for the "support of the family" and were "reasonable apparel of the wife."

"Support," as used in statutes and legal documents, may have a varying meaning. As here used it includes everything going to the sustenance and maintenance of the family. "Family" may include a wife as well as children, and its primary meaning would be held to include her if there is nothing present, as in this case, to show a contrary intent. *Bowditch* v. *Andrew*, 90 Mass. (8 Allen) 339, 341; *Dalton* v. *Knights of Columbus*, 80 Conn. 212, 215, 67 Atl. 510.

The necessity or reasonableness of the purchases does

not affect the right of recovery. Of this provision of the statute we said in *Fitzmaurice* v. *Buck*, 77 Conn. 390, 393, 59 Atl. 415: "There is no hint at a limitation to necessaries or things reasonable, with respect to articles which in fact go to the family support."

The statute was intended to permit a recovery by a third person for all articles which went for the sustenance or maintenance of the family, without respect to what provision for their support had been made otherwise. The ground upon which the appeal principally is placed is, that this statute does not create a liability for purchases made in a foreign jurisdiction, where beneficial use of the goods was not had in Connecticut by the party sought to be charged.

In an action by a merchant in the State of New York for goods there sold to a husband living in Connecticut, we concluded our opinion thus: "The statute gives a remedy confessedly to our own citizens; we think it is equally available to citizens of another State." *Buckingham* v. *Hurd*, 52 Conn. 404, 407.

Where all the parties are residents of New York and the transaction is in New York, the legal effect of the transaction and the capacity of a wife to pledge her husband's credit are to be determined by the law of New York. *Mettler* v. *Snow*, 90 Conn. 690, 98 Atl. 322. No implied authority of the wife to pledge her husband's credit could arise out of our statute because it has no extra-territorial force. But where the purchase is made in a foreign jurisdiction by one of our own residents, and the purchase comes within the "reasonable support" or the "reasonable apparel" of the statute, there is every reason why we should make the remedy of our statute as available to the foreign creditor as we would to the creditor of our own State.

If a Connecticut man's son is at a college in the State of New York, the tuition charge is support of the fam-

ily, and the college should have the right to pursue the father or mother in Connecticut through the remedy afforded by this statute. This follows from the literal meaning of the quotation from *Buckingham* v. *Hurd* and is doubly clear when read in connection with what is asserted to be the intendment of this Act in *Fitzmaurice* v. *Buck.*

The appellant attempts to distinguish this case from *Buckingham* v. *Hurd*, since it there appeared that the beneficial use was had in Connecticut while here that use was in England. In our analysis of this case in *Mettler* v. *Snow*, 90 Conn. 690, 692, 98 Atl. 322, we emphasized the fact that the goods in suit were consumed in Connecticut. Our further reading of this case discloses that nowhere in the opinion was the place of the use mentioned. What we did there determine was that the implied promise of the statute was raised from the beneficial use by the husband and wife of the goods purchased, and that the statutory remedy which resulted in consequence of this implied promise was available to the citizens of the State of New York equally as to our own citizens.

The necessities, the education, and the enjoyments of life take our husbands and wives in every part of the world. It is to their advantage that they be able to pledge their credit for their own or their joint support, or that of their family. Having done so and received the beneficial use of purchases so made, or service so rendered, it is right that payment should be made. And if our public policy justifies the statutory remedy for the support furnished here, it ought to justify it if furnished outside the State. The same reason for the one exists for the other.

The relationship of husband and wife creates a *status*. One of the incidents of the *status* is the obligation to pay for support under the terms of the statute in question.

That the parties were temporarily in England at the time does not, as matter of fact, alter the physical requirements for support. The statute is directed to the fact of support and not its place. To make the place of use the test of liability would place a construction upon the statute which would shift the incidents of the marriage *status* according to the accident of locality, while the parties all the time remained residents of this State. Such a construction would essentially impair the remedial force of the statute and is not suggested by its language nor required by any construction of the statute heretofore adopted by this court.

There is no error.

In this opinion RORABACK and GAGER, Js., concurred. PRENTICE, C. J., and BEACH, J., concurred in the result on the ground last stated.