SUSAN TUOHEY *vs.* WILLIAM J. MARTINJAK ET AL.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued January 2d—decided March 5th, 1935.

*John C. Blackall,* with whom, on the brief, was *Charles H. Blackall,* for the appellant (plaintiff).

*Olcott D. Smith,* with whom, on the brief, was *Joseph F. Berry,* for the appellees (defendants).

MALTBIE, C. J. The plaintiff brought this action to recover damages for personal injuries suffered when the automobile in which she was riding as a guest, operated by one of the defendants and maintained by the other as a family car, ran into a telegraph pole at the side of the highway. The complaint alleged that the defendant driver, diverting her attention to some vases containing flowers which were in the car and tipping over or in danger of doing so, neglected the operation of the car with the result that it proceeded along the highway without guidance until it struck the pole, and that the defendant driver was guilty of a heedless and reckless disregard of the rights of others in thus diverting her attention and permitting the car to proceed without control or direction. The defendants filed an answer containing a special defense that the action was one for personal injuries sustained on October 9th, 1932, and the writ was dated January 25th, 1934, and returnable to the first Tuesday of February, 1934, which was more than one year after the alleged cause of action accrued. The plaintiff demurred to this defense, the trial court overruled the demurrer, and the plaintiff has appealed. Whether the action of the trial court was correct or not depends upon the meaning and effect of § 6015 of the General Statutes, which provides as follows: "No action to recover damages for injury to the person, or for an injury to personal property caused by negligence, shall be brought but within one year from the date of the injury or neglect complained of." The date when the writ was served, not its date or the return day, marks the time when the action was begun; *Sanford* v. *Dick,* 17 Conn. 213; but as the writ must have been served after its date, and more than one year had elapsed between the accident and that date, the alle-

gations of the second defense, reasonably construed, are sufficient to invoke the statute, if it is applicable.

"For many years prior to the adoption of the Practice Act, and reaching back as far as 1821, one provision of our statutes had limited the time for the commencement of actions of trespass on the case to six years next after the right of action should accrue, while another provided that no action of trespass, and no action upon the case for words, should be brought but within three years. Rev. 1821, pp. 310, 311, §§ 4, 5; Rev. 1875, p. 494, §§ 6, 7. The revisers in preparing the Revision of 1888 were apparently of the opinion that since the Practice Act had abolished the distinctions between the forms of action theretofore recognized, it would be wise to dispense with the use in these statutes of the terms 'actions of trespass on the case,' 'actions upon the case,' and 'actions of trespass,' and substitute therefor definitional language of equivalent purport." *Miner* v. *McNamara,* 82 Conn. 578, 580, 74 Atl. 933. The opinion in that case goes on to point out that, beginning in 1853, certain special limitations applicable only to actions against railroad companies, and until 1897 including only actions for loss of life, were made by the Legislature. In 1877 the provision in the law for a recovery against a railroad company of damages for the loss of life of any passenger or person crossing its tracks upon a public highway was absorbed in the general laws giving an action for death by wrongful act, with its limitation of one year within which to bring suit. Public Acts, 1877, Chap. 78; *Budd* v. *Meriden Electric R. Co.,* 69 Conn. 272, 284, 37 Atl. 683. A provision limiting suits against railroad companies for damages for loss of life was, however, retained as a separate provision in the Revision of 1888, § 1383, making the period limited eighteen months; and it is out of this provision that

§ 6015 of the present Revision developed. In 1897 a substitute for the section of the 1888 Revision was enacted and in the first section of this act it was provided that no suit against any municipal corporation, railway or street railway corporation "for damages on account of injury to any person not resulting in death, or for injury to the property of any person caused by negligence," should be brought unless, "within one year from the time when such injury occurred;" and in the second section the limitation of one year for a suit for loss of life was extended to include the same corporations. Public Acts, 1897, Chap. 189. In the Revision of 1902 the language of this provision was condensed· and was extended to apply to actions against "a municipal or other corporation," so that it read: "No action against a municipal or other corporation, to recover damages for injury to the person, or for causing the death of any person, or for an injury to personal property caused by negligence, shall be brought but within one year from the date of such injury, or from the decease of such person, as the case may be." Rev. 1902, § 1119; *Fitzgerald* v. *Scovil Mfg. Co.*, 77 Conn. 528, 60 Atl. 132. In 1903 the section was further amended into its present form. Public Acts, 1903, Chap. 149.

If regard be had to the exact form of § 6015, the setting off by commas of the words "or for an injury to personal property caused by negligence" would make the qualifying phrase applicable to injury to personal property only and not to "injury to the person." In construing statutes the insertion or omission of commas will often be overlooked if thereby the fair purpose and intent of the law would be effected. *Paquin, Ltd.* v. *Westervelt,* 93 Conn. 513, 515, 106 Atl. 766; *Kubis* v. *Cornwall,* 95 Conn. 720, 723, 112 Atl. 663; *State* v. *Darazzo,* 97 Conn. 728, 735, 118 Atl. 81. In

this instance the use of the commas to set off the phrase referring to injuries to property cannot be regarded as adventitious, for this method of punctuation has characterized the statute in every form it has taken in the public acts or revisions beginning with the Act of 1897, and, indeed, the original of that act and the Act of 1903 as they were adopted by the Legislature have the same punctuation. Punctuation so uniformly followed through the various changes and re-enactments of the law cannot be disregarded in any effort to determine its intent. *Commonwealth* v. *Kelley,* 177 Mass. 221, 223, 58 N. E. 691; *Tyrrell* v. *The Mayor,* 159 N. Y. 239, 242, 53 N. E. 1111.

Looking at the history of the law, we find that it had its origin in a certain special limitation applicable to actions against railroads. The intent of the Legislature was without doubt directed not to the particular nature of the action but to the fact that it deemed it proper to make special provision as to actions against a particular class of corporations; indeed, no reason for such a special provision as regards actions for personal injuries is apparent, which would not be as applicable to an action not founded upon negligence as to one which was; while, on the other hand, as regards injury to property, the qualifying clause finds its ready explanation in the desire to exclude actions based upon contract. That the intent of the Legislature was directed to the particular parties defendant rather than to the nature of the cause of action intended is indicated by the fact that the development of the law has been along the lines of the extension as regards such parties, in 1897, to municipal, railway or street railway corporations, and in 1902 to all corporations. No doubt the underlying thought, when the change was made in 1903 striking out all reference to any particular class of defendants, was that there was no

reason to discriminate between defendants on the sole ground that some were corporations and some were individuals. If, before that amendment, the intent was to include all actions for injuries to the person, whether or not they were caused by negligence, against certain classes of defendants, there is no hint in the act then adopted of a purpose to narrow the scope of the provision. Indeed, that the modifying clause, "caused by negligence," was understood by the Legislature as applying only to actions for injuries to personal property finds added support in the concluding words of the Act of 1903, making the limitation run "from the date of the injury or neglect complained of;" for, if only actions caused by negligence were intended to be included in the statute, the word "neglect" would have been equally applicable to actions for injury to the person and to those for injury to the property, and there would be no reason for using the word "injury" in this clause.

In *Miner* v. *McNamara,* supra (p. 583), an action to recover damages for injury to personal property, we said of the change made in the Revision of 1902: "The one-year limitation thus became extended to apply in its operation to all actions against corporations where damages were sought for an injury, caused by negligence, to the person, or to personal property, or for causing the death of a person." In *Sharkey* v. *Skilton,* 83 Conn. 503, 77 Atl. 950, we had before us an action seeking recovery by a husband and wife for damages resulting from a personal injury to the latter, and we discussed the question whether or not the allegations of the complaint alleged that these injuries were "caused by negligence" within the meaning of the statute we are considering and we held that they did. In *Penobscot Fish Co.* v. *Western Union Telegraph Co.,* 91 Conn. 35, 37, 98 Atl. 341, an action to recover

damages for pecuniary loss due to the negligence of the telegraph company in changing the wording of a telegram ordering certain articles, we held that the action did not come within the provisions of the statute. We said, relying upon the *Miner* case as authority, that the statute carved out of the broad provisions of the law limiting actions founded upon a tort unaccompanied with violence and where the damages were consequential, a special class, and stated: "The earmark of the special class is that the injury complained of, whether to person or property, should be caused by negligence, that is, by a breach of a legal duty owed by the defendant to the person or property injured." In the *Miner* and *Penobscot Fish Co.* cases, the question whether the statute would apply to actions to recover damages for personal injury not caused by negligence was not directly involved, and in the *Sharkey* case we went no farther than to proceed upon the assumption that to be within the statute an action for personal injury must be based upon negligence. In none of these cases was the question as to the scope of the statute as applied to personal injuries particularly considered, and a decision earlier than any of them was overlooked. In *Fitzgerald* v. *Scovil Mfg. Co.*, 77 Conn. 528, 530, 60 Atl. 132, speaking of the law as it appeared in the Revision of 1902 where its terms were so changed that they applied to cases against all corporations, we said: "That it was a change not inconsistent with the legislative intent is evidenced by the amendment to § 1119, enacted in 1903, by which it was made applicable to all actions for injuries to the person." In *Hickey* v. *Slattery*, 103 Conn. 716, 131 Atl. 558, we had before us an action against a surgeon to recover damages for personal injuries incurred by the alleged malfeasance of the defendant in setting and treating the plaintiff's broken arm; one count was in tort, based upon negli-

gence, and another count was in contract; and we held that the first count was within the provisions of the statute which are now § 6015 of the General Statutes, but that the second count was not. In reaching this decision, relying solely upon the *Miner, Sharkey* and *Penobscot Fish Co.* cases, we said (p. 719): "The settled construction of this statute is that it applies to actions to recover damages for injuries caused by negligence, whether to the person or to personal property." The situation presented by the case now before us has led us to examine the correctness of this construction. We are necessarily led to the conclusion that § 6015 of the General Statutes includes all actions to recover for personal injuries whether due to negligence or not; and in so far as the *Hickey* case holds to the contrary it must be overruled.

It is true that this conclusion produces an apparent conflict between the provisions of § 6015, limiting all actions to recover damages for injuries to the person to one year, and those of § 6011, limiting actions of trespass to the person to three years. In preparing the Revision of 1918 the revisers inserted § 6011 without change from the form it had in the Revision of 1902 and they inserted Chapter 149 of the Public Acts of 1903 in place of § 1119 of the Revision of 1902, which it specifically amended. This treatment of the two laws accorded with the construction which then had been placed upon § 1119 in the *Miner* and *Penobscot Fish Co.* cases. Now, however, that we are satisfied that this construction was mistaken, the situation falls fully within our decision in *State* v. *Giant's Neck Land & Improvement Co.,* 116 Conn. 119, 163 Atl. 651, summed up in the headnote: "When there are two conflicting sections of a general compilation or code of statute laws, that section should prevail which is derived from a source that can be considered as the last

expression of the lawmaking power in enacting separate statutes upon the same subject." Our conclusion, that § 6015 applies to all actions to recover damages for injury to the person, whether or not that injury was caused by negligence, brings the result that the trial court was correct in overruling the demurrer to the second defense.

There is no error.

In this opinion the other judges concurred.