### BERTHA E. DELLE
vs.
### BERNHARDT E. DELLE

Superior Court    New Haven County    File #48092

Present:  Hon. JOHN A. CORNELL, Judge.

Wiggin & Dana,         Attorneys for the Plaintiff.

Herbert L. Emanuelson,    Attorney for the Defendant.

**MEMORANDUM FILED JANUARY 2, 1936.**

CORNELL, J.  It appears here that since August 3, 1929, the plaintiff and defendant who were married in 1905, have lived separate and apart from each other—the plaintiff in Brooklyn, New York, and with her the children of the marriage, the defendant in New Haven, Conn.

One of the children during almost all of this period, was and another for its entirety and at present, is a minor.

It is in evidence that following a violent scene between defendant and other members of his family which occurred at the Brooklyn residence, defendant returned to New Haven

and on August 5, 1929, caused plaintiff, his wife, to be notified that he would not renew the lease for the family house in Brooklyn at its expiration on September 30, 1929, but would provide a suitable home for her in New Haven. Defendant's employment was at the latter city where he occupied a room in a hotel whence he went to the Brooklyn residence, except during periods when estrangements existed, over the week-ends and more or less frequently throughout the week.

After some correspondence between attorneys for each of the parties to this action, the plaintiff, on August 27, 1929, advised defendant that she had elected to maintain her home in Brooklyn, with the then four children of the marriage, one of whom has since died.

One of the questions of fact as to which the parties are at issue concerns the question of whether defendant's attitude and conduct toward plaintiff and the other members of the family was such as to justify the plaintiff in maintaining an abode apart from him.

Insofar as it may be material, it is found that defendant's conduct was such as to justify the defendant and the other members of the family in maintaining a separate residence, especially after the events of August 3, 1929.

While defendant had, prior to August 3, 1929, provided well enough for plaintiff's and his minor children's support, he ceased to contribute anything, whatever, after that date and much, if not all, of the means of support and maintenance which they had, came from the earnings of the two elder sons until one of them died in 1934, and thereafter, from the survivor of them until the latter lost his employment. This was in the form of money paid to plaintiff as increased board.

The third and fourth counts allege express agreements on defendant's part—the one, that "defendant expressly agreed and undertook to pay to the plaintiff the sum of $15.00 per week for the support of said children . . . . for so long a time as said children should remain minors"; and in the other that "the defendant expressly agreed and undertook to pay to the plaintiff the amounts of such reasonable dental and medical bills as might be incurred by the plaintiff for the benefit of said children . . . ."

It is true that in a letter written under date of September 2, 1919, defendant, through his attorney, offered to pay $15.00

per week for the support of the minor children and later in letters written by his counsel on November 29, 1929 and January 8, 1930, repeated the offer but in these latter communications appended to it a condition that he be given credit for one-half the amount of a bank deposit which stood or had stood in the joint names of plaintiff and defendant.

There is no evidence that any of these offers was accepted by plaintiff or any other testimony from which the court may permissibly find that such an express agreement as is alleged in either of these counts, came into being.

In the first count, it is alleged that (since the date of separation) the "defendant has never contributed to or paid for the said support of said children . . . . nor has the defendant indemnified the plaintiff in any manner for such sums of her own monies as the plaintiff has been and may be obliged and compelled in the future to pay for the support of said children."

As to this, it appears from what was said during the trial and contentions made in brief that the claim described is predicated on the provisions of **General Statutes, Rev. 1930, #5155** and, particularly, that portion thereof which reads as follows:

"It shall be the duty of the husband to support his family and his property when found shall be first applied to satisfy any such joint liability; and the wife shall be entitled to an indemnity from the property of the husband for any property of her own that shall have been taken, or for any money that she shall have been compelled to pay for the satisfaction of any such claim."

This particular part of the statute has not been interpreted by the Supreme Court of Errors.

Of the provisions which precede those quoted, it has been said:

"The statute was intended to permit a recovery by a third person for all articles which went for the sustenance or maintenance of the family without respect to what provision for their support has been made otherwise." **Paquin vs. Westervelt, 93 Conn. 513, 516; Howland Dry Goods Co. vs. Welch, 94 Conn. 265, 267.**

Considered in this light, the phraseology of the portion

invoked by plaintiff appears to attain a quite definite significance. Thus, since though the liability (to third persons) of husband and wife for that which goes for the sustenance and maintenance of the family is "joint", and the wife is to be entitled to an indemnity from the property of the husband, this right of indemnity is called into existence only if one or both of two events can be found to have transpired, viz., (1) if any property of her own shall have been taken for the satisfaction of any such claim, or (2) "for any money that she shall have been compelled to pay, for the satisfaction of any such claim."

There is no evidence to support a claim of indemnity founded on the first of these. As to the other, there is equally none which discloses that plaintiff was at any time under the compulsion of paying her own money to satisfy a claim held by any one arising from the furnishing "of articles" for the sustenance or maintenance of the family.

The word "compelled" in its ordinary sense means: "to drive or urge with force; to constrain, oblige, necessitate, whether by physical or moral force" . . . . and "may in some cases refer to compulsion exercised through the process of the courts, or through laws acting directly upon the parties" Ains vs. Hayes, 92 Conn. 130, 133.

Looking at the statute in its entirety and having in mind its purpose as declared by the Supreme Court of Errors (noted supra) it is concluded that the right of indemnity afforded a wife by its provisions is available to her only in cases where if her property is not actually taken to satisfy a claim of the character described, she pays money of her own "in satisfaction of any such claim"; (1) in the imminent presence of legal action designed to collect it, actually begun, pending or, at least, reasonably believed by her to be about to be inalterably comemnced or (2) in such a situation as exerts a moral pressure so great as to contain the element of compulsion (e.g. to save minor children from the effects of destitution) as contradistinguished from an appeal to maternal instincts or solicitude.

All this connotes, it is believed, (a) that there shall be a claim or claims held by a third person who has furnished articles for the sustenance or maintenance of the family and (b) payment in satisfaction of it by a wife from her own funds

under compulsion of either of the varieties mentioned.

The evidence here shows nothing descriptive of either of these situations. On the contrary, it depicts the plaintiff as herself executing the lease to the premises theretofore and thereafter occupied as a home upon defendant's refusal to do so. It, also, shows the elderly sons upon the occurrence of the separation as straightway practically doubling the weekly sums which they had previously paid plaintiff for board and the plaintiff, substantially out of such monies, paying the rent and providing food and other reasonable necessities and com, forts for herself and the minor children.

It is significant, too, that the action instituted by plaintiff against defendant by writ dated January 31, 1930 (which later came to trial but ended in a result not prejudicial to the claims of either of its parties) sought only, as relief, "contri, bution to the amount of money spent toward the reasonable support" and an order for future support of the minor chil, dren and is silent as concerns any claim of indemnity under the statute for monies paid under the conditions therein comprehended.

In short, the evidence fails to show any instance of monies paid for the sustenance and maintenance of the minor children under any form of compulsion envisaged by the statute but on the contrary the payment of monies by plaintiff for such purposes under circumstances free from the immediate influ, ence of such compulsion.

What has been said also applies to the allegation in the first count that the plaintiff has failed to indemnify the plain, tiff "for such sums of her own monies as the plaintiff . . . . may be obliged and compelled in the future to pay for the support of said children". There is, of course, nothing in the statute on which reliance is placed, if the interpretation here accorded it, be sound, which places such a legal duty on a husband.

The second count sets up an implied agreement, to be found from the fact that defendant left the minor children in the care and custody of the plaintiff and consented and agreed that they should remain there. There was, of course, no actual specific consent or agreement on defendant's part to the effect described, although it may fairly be found from the evidence, that there was a consent by implication that plaintiff

should exercise such functions for the period that has actually elapsed.

**General Statutes, Rev. 1930, #4794** makes the mother and father of a minor child, joint guardians and confers an equality as between them with respective rights, powers and duties as concerns such a child.

This status is not affected by the circumstances that the parents are separated from each other. **Pfeiffer vs. Pfeiffer, 99 Conn. 154, 157.** There is no evidence here that defendant has been deprived of any of his rights or prerogatives as a joint guardian of the minor children. His legal rights in that respect have, therefore, continued and are at this time equal to plaintiff's. This means that he may at any time, unless upon proper application a competent court restrains him, exert his equal right to the custody of the remaining minor.

The mere fact, therefore, that defendant has permitted the minor children—one during the entire remaining period of her minority and the other up to the present—to remain in plaintiff's custody does not show an agreement, express or implied, that he was to "provide and pay for the support of said children, **during the remainder of their respective minorities.**

All that is shown in this respect is that the minor children have remained in plaintiff's exclusive custody without objection on defendant's part since plaintiff and defendant separated and have been sustained and maintained by her, alone, during this period.

Neither the second count, nor any count in the complaint, however, describes a cause of action based on such facts. That stated in the second count cannot be said to do so, because it alleges an agreement—whether express or implied—prospective in operation in that it envisaged the entire future period of minority. An undertaking of that character is, of course, readily distinguishable from an obligation which might be alleged to have arisen from support and maintenance already given by one parent, alone, upon the part of the other to reimburse the first in whole or in part.

These conclusions, of course, dictate that judgment should be rendered for the defendant. But it is equally apparent

from what is said in the complaint and the claims of counsel, viewed in the light of the evidence that plaintiff may wish to amend her complaint. This may be done, provided such an amendment is filed within ten days next following the date of filing of this memorandum in the office of the clerk. Should such an amendment not be filed within such period, the clerk will enter judgment for the defendant on all four counts at the expiration of same.

If it is so filed the permission to do so conditioned that when amended, the complaint as amended shall state no cause of action for which there is not already support in the evidence.

Upon the filing of such an amendment if it is filed, defendant will, of course, be afforded the opportunity to plead further as provided by the rules, unless he sees fit to waive that right.  **Mazulis vs. Zeldner, 116 Conn. 314.**