STATE OF CONNECTICUT *v.* THOMAS C. CAMBRIA, ADMINISTRATOR (ESTATE OF WILLIAM A. GRIFFIN)

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued January 2—decided March 27, 1951

*Ernest H. Halstedt,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the plaintiff.

*William M. Citron* and *Don Cambria,* for the defendant.

O'SULLIVAN, J.   The parties have stipulated as to the following facts: William Griffin of Essex was struck and killed by an automobile on September 14, 1947. The defendant is the administrator on his estate.   An action for wrongful death was settled for $2100.   The plaintiff presented a claim against the estate based upon a ten-year grant of old-age benefits to the intestate during his lifetime.   The claim was allowed, but payment was denied on the ground that it would require the defendant to use a part of the aforementioned $2100.   The questions presented by the reservation[1]

---

[1] The questions upon which advice is sought have been changed, by stipulation of the parties, from those appearing in the printed record to the following:

(1) (a)   Is the amount received as damages for injuries resulting in death subject to payment for costs and expenses of suit, all funeral bills and the expenses of administration, when there is other estate of the decedent?

(b)   Or, are these payments to be deducted from other estate of decedent?

(c)   Or, should these payments be prorated between the

seek a determination of the use to which moneys received for wrongful death may be applied.

Section 7063 of the General Statutes provides that "All damages recovered for injuries resulting in death, after payment of the costs and expenses of suit, all expenses of last illness and all funeral bills and the expenses of administration, shall be distributed in accordance with the law concerning the distribution of intestate personal estate." The plaintiff maintains that this requires the administrator to make available for the intestate's other creditors such amount of the moneys received for wrongful death as may remain in his hands after payment of the items of expense enumerated in the statute. It seems needless to add that the defendant takes a contrary position.

The problem is one of statutory construction. In seeking to ascertain the legislative intent, we may look to the history of the statute and the policy underlying it. *Giammattei* v. *Egan*, 135 Conn. 666, 668, 68 A. 2d 129; *Finoia* v. *Winchester Repeating Arms Co.*, 130 Conn. 381, 384, 34 A. 2d 636. Indeed, these may furnish the most illuminating clue. *Quinebaug Bank* v. *Tarbox*, 20 Conn. 510, 518; *Connecticut Light & Power Co.* v. *Walsh*, 134 Conn. 295, 306, 57 A. 2d 128.

At least as far back as 1672, the colony of Connecticut permitted the recovery of £ 100 for the death of a person occasioned by a defective bridge or highway. Statutes, 1673, p. 7. The sum was payable "to the Parents, Husband, Wife or Children or next of Kin to the party deceased." Although the penalty was subsequently changed from pounds to dollars, this ancient

recovery amount and other estate of decedent?

(2) Save as stated in General Statutes, § 7063, are the claims of creditors and any others interested in the estate excluded from participation in the recovery amount, when there is other estate of decedent?

act was not repealed until 1848. Public Acts, 1848, c. 49.

For the following three years there appears to have been no statute creating in anyone a right to recover for the wrongful death of another. In 1851, the General Assembly, reviving the idea of a penalty, provided that, if any person should lose his life in consequence of the failure of railroad employees to blow a whistle or sound a bell when a locomotive approached a grade crossing, the company should forfeit $1000 "to the widow of such deceased person . . . and if there be no widow, to the children . . . and if there be neither widow or children, then to the nearest relatives . . . ." Public Acts, 1851, c. 43, § 2. The significance of this act and the previous one, as they throw light on the present inquiry, lies in the designation of the individuals in whom the exclusive right to the penalty was vested.

In 1853 another act was passed, providing that a railroad company should be liable in damages of not less than $1000 nor more than $5000 for negligently causing the death of one of its passengers or of a person upon a public highway. The right to sue was lodged, for the first time, in the executor or administrator, and recovery was to be "for the benefit of the husband or widow and heirs of the deceased person, one moiety thereof to go to the husband or widow, and the other to the children of the deceased, but, if there shall be no children, the whole to the husband or widow, and if no husband or widow, to the heirs according to the law regulating the distribution of intestate personal estate." Public Acts, 1853, c. 74, § 8. For an identical plan of distributing moneys recovered in an action for death caused by a railroad company's failure to fence in its right of way, see Public Acts, 1869, c. 48, § 2. The pertinence

of these acts of 1853 and 1869 is that the legislature, in authorizing the administrator to sue, required him to segregate from other estate of the intestate the damages recovered for wrongful death and to apply them for the sole benefit of the named individuals. Thus each of these acts not only provided for a recovery but also incorporated within itself its own statute of distributions. *Budd* v. *Meriden Electric R. Co.*, 69 Conn. 272, 284, 37 A. 683.

In the seventies, the legislature made a drastic change in policy. From 1851 to 1877, its limited target had been railroad companies. In the latter year, liability was extended to include all persons who were legally at fault. Public Acts, 1877, c. 78. This act required that damages collected for wrongful death were "to be distributed as is provided in section nine, chapter six, title nineteen, of the general statutes, revision of 1875." The relevant part of that statute read that "all damages for an injury resulting in death, recovered in an action brought by any executor or administrator, shall enure to the benefit of the husband or widow and heirs of the deceased person, after deducting the costs and expenses of suit, as follows: half to the husband, or widow, and half to the lineal descendants of the deceased, *per stirpes;* but if there be no descendants, the whole shall go to the husband or widow, and if no husband or widow, to the heirs, according to the law regulating the distribution of intestate personal estate." General Statutes, Rev. 1875, p. 422, § 9. It should be noted that by this enactment the General Assembly, for the first time, permitted any one other than members of the decedent's family or his or her heirs to participate in the distribution of damages. The recovery was subjected to certain claims, described as "costs and expenses of suit." No substantial modification was thereafter made in the statute until 1915, when the

amount recovered was further subjected to the "payment of . . . all doctors' and funeral bills and the expenses of administration." Public Acts, 1915, c. 44. This act also changed the method previously set up for distributing the damages. It omitted the specific reference to the husband, widow or lineal descendants of the decedent, retaining only the provision that the damages should be distributed in accordance with the Statute of Distributions. With a slight alteration in language, but with none in substance, the act of 1915 is now embodied in § 7063.

We have gone to this length to make apparent the underlying policy which inspired the aforementioned enactments. It was not for the benefit of the estate of the intestate that the legislature acted. It was to make certain that those who, because of their close relationship, would ordinarily rely upon the intestate should have the exclusive use of the monetary consideration which the law aimed to provide as a substitute, at least in part, for the support and comfort which they had lost. Thus, from 1672 until 1853, this was accomplished by vesting in the widow and children a right to recover the penalty directly. From 1853 on, authority to sue was lodged in the administrator, not, we reiterate, for the benefit of the estate, but solely for that of the named beneficiaries. Nor is there any good reason, or, still less, a compelling one, to hold that the act of 1915 altered the traditional legislative policy merely because it provided a different formula for ascertaining the beneficiaries. The fund which comes into the hands of the administrator as damages for wrongful death still retains the earmarks of a trust which have characterized its status since 1853. He must use it for no other purpose than to meet the charges to which the statute explicitly subjects it and turn over the balance to those who qualify under the

Statute of Distributions. *Uva* v. *Alonzy*, 116 Conn. 91, 95, 163 A. 612; see 16 Am. Jur. 171.

The plaintiff further maintains that § 7057 makes the fund available to all creditors. That section provides: "Intestate estates, after deducting expenses and charges, shall be distributed by the administrator . . . ." The plaintiff's point is that when the items enumerated in § 7063 have been paid from the fund the balance is intestate estate, subject, as such, to the payment of the claims falling within the designation of "expenses and charges." This would necessarily mean that the provision of § 7063 concerning payment of specified expenses is purposeless, since they would be paid by virtue of § 7057. In the absence of any impelling reason, no statutory provision is to be regarded as superfluous. *General Motors Corporation* v. *Mulquin*, 134 Conn. 118, 126, 55 A. 2d 732. No such reason appears in this case. As previously indicated, the legislature intended that the fund should go directly to those close to the intestate, after first subjecting it to the payment of those claims which, it is noteworthy to observe, are for services immediately consequent upon the wrongful death. To impose upon the amount realized payment of all creditors would defeat the objective which has been manifested by legislative enactments for almost one hundred years. Section 7057 has no bearing whatsoever upon the privileged status which § 7063 has given to the fund. The "law concerning the distribution of intestate personal estate" referred to in § 7063 is that set forth in § 7058 et seq., providing for distribution to the husband or wife and next of kin of the intestate.

In view of the foregoing, the answers to the propounded questions become evident. Other than those expressly mentioned in the statute, creditors of the intestate's estate are precluded from asserting their claims against moneys received for wrongful death.

*Budd* v. *Meriden Electric R. Co.*, 69 Conn. 272, 284, 37 A. 683. Since these moneys are a trust, they must be used to pay the items of expense specified in § 7063, whether or not other estate is available for that purpose.

More concretely, we answer "Yes" to questions 1(a) and 2; "Only to the amount by which the damages received for wrongful death are insufficient," to question 1(b); and "No" to question 1(c).

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.