ISAAC J. MUROV ET AL. *v.* T. EMMET MURRAY

SUPERIOR COURT       FAIRFIELD COUNTY       FILE No. 115520
AT BRIDGEPORT

Memorandum filed December 21, 1962

*T. Paul Tremont,* of Bridgeport, for the plaintiffs.

*Pullman, Comley, Bradley & Reeves,* of Bridgeport, for the defendant.

HOUSE, J. This is an action for a declaratory judgment and has been presented to the court on a stipulation of facts. It presents a very narrow issue of law involving the interpretation of § 12-81 (20) of the General Statutes. Section 12-81 is entitled "Exemptions" and provides what property shall be exempt from the property tax. Subsection (20) is entitled "Servicemen and ex-servicemen having disability ratings" and so far as relevant to the present inquiry provides as follows: "Subject to the provisions hereinafter stated, property not exceeding three thousand dollars in amount shall be exempt from taxation, which property belongs to, or is held in trust for, any resident of this state who has served, or is serving, in the

army, navy, marine corps, coast guard or air force of the United States and (1) has a disability rating by the veterans administration of the United States amounting to ten per cent or more of total disability, provided such exemption shall be fifteen hundred dollars in any case in which such rating is between ten per cent and twenty-five per cent; two thousand dollars in any case in which such rating is more than twenty-five per cent but not more than fifty per cent; twenty-five hundred dollars in any case in which such rating is more than fifty per cent but not more than seventy-five per cent; and three thousand dollars in any case in which such person has attained sixty-five years of age or such rating is more than seventy-five per cent; or (2) is receiving a pension, annuity or compensation from the United States because of the loss in service of a leg or arm or that which is considered by the rules of the United States pension office or the bureau of war risk insurance the equivalent of such loss."

The plaintiffs are residents and taxpayers in the town of Stratford, and on the assessment date each owned property which had an assessed value of more than $3000. Each served in the United States army and is receiving a pension from the United States because of the loss of a leg while in the military service. As a result of such amputations, each has a disability rating from the veterans administration amounting to more than 25 percent but not more than 50 percent. Both have complied with all procedural requirements of § 12-81 (20) and are therefore entitled to an exemption. The tax assessor for the town of Stratford has allowed each an exemption of $2000 on the assessment list of October 1, 1961, although prior to that date each had been receiving an exemption of $3000 based upon the same disability. The plaintiffs seek a declaratory judgment "determining whether a ser-

viceman suffering the loss in service of a leg or arm, or that which is considered by the rules of the United States Pension Office, or the Bureau of War Risk Insurance, the equivalent of such loss is entitled to the maximum exemption of $3,000.00 regardless of what percentage such loss may be rated at."

It is well settled that a "statute is to be so construed as to carry out the intent of the legislature, this to be ascertained from the Act itself, if the language is plain, otherwise by considering it in the light of all its provisions, the object sought to be accomplished, pre-existing legislation upon the same subject, and other relevant circumstances." *Stamford* v. *Stamford,* 107 Conn. 596, 605; *Hartford* v. *Suffield,* 137 Conn. 341, 343. The General Statutes themselves provide in § 1-1: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." "In seeking to ascertain the legislative intent, we may look to the history of the statute and the policy underlying it. *State* v. *Cambria,* 137 Conn. 604, 606, 80 A.2d 516. Legislative intent is to be found not in what the legislature meant to say but in the meaning of what it did say. *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 686, 81 A.2d 119. We are called upon to look beyond the literal meaning of the words to the history of the law, its language, considered in all its parts, the mischief the law was designed to remedy, and the policy underlying it. *Giammattei* v. *Egan,* 135 Conn. 666, 668, 68 A.2d 129. We must look, also, to the basic policy as disclosed by pre-existing legislation and the circumstances which brought about the enactment of the law under consideration. *Cedar Island Improvement Assn.* v. *Clinton Electric Light & Power Co.,* 142 Conn. 359, 364, 114 A.2d 535." *Lee* v. *Lee,* 145 Conn. 355, 358.

A reading of § 12-81 (20) clearly indicates that there are two basic distinct classes of disabled veterans considered, (1) those who have a disability rating by the veterans administration amounting to 10 percent or more of total disability; "or" (2) those who are receiving a pension, annuity or compensation because of the loss in service of a leg or arm or the equivalent under the rules of the United States pension office or the bureau of war risk insurance. Both the punctuation employed in the statute and the use of the word "or" before "(2)" clearly indicate that the two classes of disabled veterans are to be treated alternatively. If the interpretation of the defendant were accepted, there would be no logical necessity for the inclusion of part (2), since the only measure of tax exemption would be the disability rating set by the veterans administration.

The legislative history of this provision of the statutes supports this conclusion. What is now part (2) of § 12-81 (20) appears in the Revision of 1930 as § 1163 (18) (Rev. 1949, § 1761 [18]) and clearly and explicitly grants a $3000 exemption to a veteran receiving a pension because of the loss of an arm or leg. The section was amended in 1951 (Cum. Sup. 1951, § 376b; Cum. Sup. 1953, § 855c [18]) to include air force veterans among those entitled to the exemption. Then in 1955 (Public Act No. 49, §§ 1, 3, Spec. Sess., June, 1955), this section and § 861c of the 1953 Supplement to the General Statutes were both repealed and re-enacted as one section, the former § 376b becoming part (2) in the same language as now appears in § 12-81 (20). If the General Assembly had intended to have all tax exemptions based upon disability rating, there would have been no reason or necessity for including part (2) of the section now in dispute. It is therefore obvious that the General

Assembly intended to apply to the amputee a different standard from the one applied to other disabled veterans.

It is concluded that the General Assembly has by § 12-81 (20) created two separate classifications of exemption for disabled veterans—one, the amputees who are entitled to a $3000 exemption for the loss of an arm or a leg, and, in the other classification, all other disabled veterans who have more than a 10 percent disability, as to whom the amount of the exemption is determined by the percentage of disability rating.

In answer to the specific prayer for judgment requested by the plaintiffs, it is determined that as veterans who have suffered the loss of an arm or a leg in the military service (or that which is considered by the rules of the United States pension office or the bureau of war risk insurance the equivalent of such loss) and who have satisfied the other requirements of § 12-81 (20) of the General Statutes, they are entitled to the exemption of $3000 regardless of the percentage of disability rating which may be accorded to such an amputee.

Judgment may enter accordingly.