The CONNECTICUT BANK AND TRUST COMPANY, Executor of the Estate of Warren G. Horton, Plaintiff,

v.

UNITED STATES of America, Defendant.

The CONNECTICUT BANK AND TRUST COMPANY, Executor of the Estate of Charles F. Musk, Plaintiff,

v.

UNITED STATES of America, Defendant.

The CONNECTICUT BANK AND TRUST COMPANY, Executor of the Estate of Mary Ann Musk, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 13412, 13413, 13402.

United States District Court, D. Connecticut.

July 9, 1971.

Sherin V. Reynolds, Reid & Reige, Hartford, Conn., for plaintiffs.

B. Blair Crawford, Asst. U. S. Atty., Hartford, Conn., Daniel J. Dinan, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

CLARIE, District Judge.

### RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

These actions were consolidated for trial, because of their presenting a common legal issue; each seeks the refund of federal estate taxes assessed on the proceeds received from the settlement of a wrongful death action. The Government's position was that the money damages recovered should be included in the gross estate of the decedents under § 2033 of the Internal Revenue Code. The parties have filed cross motions for summary judgment pursuant to Fed.R.Civ.P. 56, and both concede that no genuine issues of disputed fact exist. The Court finds that under the Connecticut wrongful death statute (§ 52–555, as amended) and the statute prescribing the distribution of damages recovered for wrongful death (§ 45–280, as amended), all sums

recovered on such choses in action constitute "property" for estate tax purposes held at the death of the decedents and must be included in the decedents' gross estate.

The tragic facts which gave rise to this litigation have been stipulated to by the parties. On June 14, 1965, Warren G. Horton, Charles F. Musk, and his wife, Mary Ann Musk, (the decedents), together with R. Virginia Horton, the wife of Warren G. Horton (who is not a party to this litigation) were killed when their car exploded, after being struck on the Chesapeake Bay Bridge Tunnel within the State of Virginia, by a tractor-trailer truck owned by HMH Motor Service. The decedents were domiciled in Connecticut at the time of their death and letters testamentary were issued to the plaintiff as executor of the decedents' estates by the probate courts in Connecticut.

In the Spring of 1966, the plaintiff executor commenced a wrongful death action in the state courts of New York against HMH, a New Jersey corporation doing business in New York. The suit was subsequently removed to the Federal District Court for the Southern District of New York. Ultimately the damage claims were settled without a trial and compromise settlements totalling $320,-000, were approved and releases authorized by the Connecticut Probate Courts. The plaintiff executor in each instance predicated its claims for recovery under the allegations of the complaint, upon the Connecticut wrongful death statute (§ 52–555). The defendant, HMH, however, contended that Virginia law (§ 8–363), which at that time limited the maximum recovery to $25,000 for each person, should govern the final disposition of the case. Since all cases were settled without a trial, no judicial determination was ever made as to which of these wrongful death statutes (or conceivably whether or not the statutes of other jurisdictions) controlled the plaintiff's potential recovery.

Each settlement, less the costs and expenses, was distributed to the respective estates of the plaintiff's decedents and to the estate of R. Virginia Horton as follows: Warren G. Horton, $51,638.34; Charles F. Musk, $97,080.77; Mary Ann Musk, $37,179.60; R. Virginia Horton, $20,655.33. These receipts were not included in the gross estate of the decedents by the executor, when timely filing was made of their respective federal estate tax returns. However, after an audit, the Commissioner of Internal Revenue assessed deficiencies against the estates of the decedents, maintaining that the wrongful death recoveries were taxable as their property. The deficiencies were paid and claims for refund were filed, upon the denial of which this suit was instituted.

The Court must resolve the issue as to whether or not these proceeds are taxable and this requires a determination of whether the recovery settlements were obtained under the laws of Connecticut, New Jersey, New York, or Virginia. Connecticut, unlike the other named jurisdictions, does not have the so-called "Lord Campbell's Act" wrongful death statute. The latter statute generally requires the vesting of the death action proceeds in the statutory dependents as beneficiaries. Connecticut's position differs from that of the other states hereinbefore mentioned, in that § 52–599 derives its force from the survival of actions law, which thus affords a basis for the Government's claim that these funds are taxable.

Unlike insurance death benefits which are specifically dealt with under the Internal Revenue Code, wrongful death recoveries are not specifically treated in the statutes, regulations, or ruling case law. However, there have been several revenue rulings on this and other closely related topics, which the Court will consider and discuss in helping it to resolve the issue. United States v. Correll, 389 U.S. 299, 307, 88 S.Ct. 445, 19 L.Ed. 2d 537 (1967).

Section 2033 of the Revenue Code and its predecessor, provided in part: "The value of the gross estate shall include the value of all property to the extent of the

interest therein of the decedent at the time of his death." In E.T. 18, 1940–2 Cum.Bull. 285, the question arose as to whether money paid by the Social Security Administration to widows, children, or parents by reason of the death of a person covered by the Social Security Act was to be included in the gross estate for estate taxation. The Internal Revenue Service declared that such funds were not includable, because such sums were not "property" under the federal estate tax provision cited above.

"An examination of * * * that Act * * * shows that the decedent has no control over the designation of the beneficiaries or the amounts payable to them. The beneficiaries and the amounts are fixed by the provisions of the Social Security Act, as amended, and the payments are made directly to the beneficiaries." *See also* Rev.Rul. 56–637.

However, Rev.Rul. 54–19 is more directly in point. In that instance, the Revenue Service was asked to rule on whether settlement funds received under the New Jersey wrongful death statute were includable in the gross estate of the decedent. The ruling sets forth the New Jersey statute and finds that while the administrator or executor is authorized to commence the wrongful death action in his official capacity, he does in fact act solely for the intestate successors to the plaintiff's decedent. This ruling concludes:

"The decisive question in this case is whether the decedent had an interest in the amount recoverable under the New Jersey 'Death by Wrongful act' statute or in the right of action at the time of his death. The action against the carrier was brought under the statute, and the statute governs in determining the distribution of the proceeds of the recovery. The decedent in his lifetime never had an interest in the right of action or in the proceeds. He did not create the right, it was created by statute and vested in the persons designated in the statute. Inasmuch as the decedent had no right of action or interest in the proceeds at the time of his death, nothing 'passed' from the decedent to the beneficiaries. Accordingly, the amounts recovered by the beneficiaries would not be includable in the decedent's gross estate for Federal estate tax purposes."

*See also* Rev.Rul. 68–88 where the service similarly interpreted the Virginia wrongful death and related uninsured motorist statutes.

Finally in Rev.Rul. 69–8 the Internal Revenue Service was asked whether or not damages recovered in an action brought under the Federal Death on the High Seas Act were includable in the gross estate. The ruling indicated that the complaint sought recovery both for the benefit of the widow and children of the deceased (as specifically allowed in the statute) and in addition, an allowance for the decedent's pain and suffering (judicially determined to be actionable under the state survival statutes). The ruling concluded that such portion of the damages recovered for the support of statutory beneficiaries should be treated as not taxable, in the same manner as the ruling under the New Jersey wrongful death statute, while that portion of the monetary recovery relating solely to pain and suffering, based upon the survival of actions theory, was required to be included in the gross estate. In summary, the factors taken into account in these rulings are: (1) what was the interest held by the decedent in the right of action; (2) the extent to which the statute sued under is in a form which provides for the survival of actions, and (3) the degree of control the decedent has over the right to exercise distribution of the proceeds. Upon a finding that the decedent "passed" any interest to the beneficiaries, these rulings conclude that that interest would be includable in the decedent's gross estate.

▆ To decide the present controversy, the Court must first determine under which wrongful death statute the recovery was obtained. The plaintiff has suggested that this Court could find that the statutes of Virginia, Connecticut, or

New Jersey might apply here. Considering the choice of law precedents established by the New York State Court of Appeals, (Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)), this Court concludes that the Connecticut wrongful death survivor statute (§ 52–555) is applicable and § 45–280, as amended, affords a testator the power to distribute the proceeds of the death settlement.

[2]  New York has abandoned a strict "lex loci delicti" rule in favor of one that applies the law of the jurisdiction having the greatest contacts or concern with the matter at issue and has the strongest interest in its resolution.  One of the chief factors in determining the applicable law in a death case is the domicil of the deceased at the time of death, because each state is vitally concerned with the administration of the estate of one of its decedents.  Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); Long v. Pan American World Airways, Inc., 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796, 798 (1965).  The plaintiff maintains that the *Long* case may be distinguished, because there the law of Pennsylvania (which also has the "significant contacts" test) was being applied while here the law of Connecticut is to be applied and Connecticut strongly adheres to the traditional rules of utilizing the law of the situs, which would be Virginia law.  However, the *Long* case makes no reference to Pennsylvania choice of law rules and this factor was not controlling.  *See* Restatement (Second) of Conflicts of Law § 145, Comment h (1971).  The conclusion that the Connecticut wrongful death statute applies is strengthened by the fact that in the tort suit the plaintiff's complaint affirmatively relied upon Conn.Gen.Stat. § 52–555.  Furthermore, the probate courts in Connecticut authorized the compromise settlement and three of the individual case settlements were in excess of the maximum allowed under Virginia law.  (Maximum of $25,000 for each person as the law read prior to 1968).

▮  The Connecticut cases make clear that § 52–555 is to be read in conjunction with the survival of actions statute, § 52–599.  The survival statute permits the rights of action for tort to continue after death, and the wrongful death statute adds to that action the element of damage for the death itself, unknown as common law.

"By our wrongful death statute (General Statutes § 52–555), death is made an element of damage for which recovery may be obtained pursuant to the procedure specified in that statute.  But the statutory right of actions belongs, in effect, to the decedent, and to the decedent alone, and damages are recoverable 'for the death * * * as for one of the consequences of the wrong inflicted upon the decedent.' * * * '(T)he cause of action * * * (authorized by the statute) is a continuance of that which the decedent could have asserted had he lived' and to which the death may be added as an element of damage."  Foran v. Carangelo, 153 Conn. 356, 360, 216 A.2d 638, 640.  *See generally* 40 Conn.B.J. 505 (1966).

The form and interpretation of the Connecticut statute are conscious policy decisions by the state legislature and court systems.

"It may not be inappropriate to point out that our law often works out much more fairly than do statutes patterned on Lord Campbell's Act, where generally no damages at all are recoverable for the death of a breadwinner who leaves no surviving dependents.  Thus in the all-too-common case where an entire family is killed in a single accident, if the breadwinner survives the other members of his family, even by seconds, generally no damages are recoverable for his death, in the absence of other dependents."  Floyd v. Fruit Industries, Inc., 144 Conn. 659, 676, 136 A.2d 918, 927 (1957).

The Connecticut statute specifically creates rights in a decedent at the time of his death for his own benefit over which he is given the right to distribute property by Will as he chooses. The Court concludes that the plaintiff's decedents thus held a property interest disposable by Will which must be included in their respective gross estates. This finding is reached by reference to the amended statute which specifically provides for the distribution of the proceeds of the wrongful death actions:

"All damages recovered for injuries resulting in death, which death occurred on or after October 1, 1961, after payment of the cost and expenses of suit, all expenses of last illness and all funeral bills, the expenses of administration and claims against the estate and such amount for the support of the surviving spouse or family of the deceased during the settlement of the estate as the court of probate may allow, shall be distributed as personal estate in accordance with the last will and testament of the deceased if there is one or, if not in accordance with the law concerning the distribution of intestate personal estate, provided such damages shall not be subject to taxation under the provisions of chapter 216 (Connecticut Succession Taxation). Conn.Gen.Stat. § 45–280, as amended.

This new statutory provision completely changed the approach of Connecticut over the disposition of these proceeds which before 1961 had only passed to the decedent's heirs-at-law. Under the statute as presently-worded where there is a Will, the deceased directly controls the distribution and exercises absolute rights over the disposition of the proceeds.

This amended statute by its very terms also eliminated the doctrine developed in State v. Cambria, 137 Conn. 604, 80 A.2d 516 (1951) that:

"(I)t was not for the benefit of the estate of the (deceased) that the legislature acted. It was to make certain that those who, because of their close relationship, would ordinarily rely upon the intestate should have the exclusive use of the monetary consideration which the law aimed to provide as a substitute, at least in part, for the support and comfort which they had lost. Thus, from 1672 until 1853, this was accomplished by vesting in the widow and children a right to recover the penalty directly. From 1853 on, authority to sue was lodged in the administrator, not, we reiterate, for the benefit of the estate, but solely for that of the named beneficiaries. Nor is there any good reason, or, still less, a compelling one, to hold that the act of 1915 altered the traditional legislative policy merely because it provided a different formula for ascertaining the beneficiaries. The fund which comes into the hands of the administrator as damages for wrongful death still retains the earmarks of a trust which have characterized its status since 1853. He must use it for no other purpose than to meet the charges to which the statute explicitly subjects it and to turn over the balance to those who qualify under the Statute of Distributions." (at 609, 80 A.2d at 519).

This case concluded by holding that the state's claim for the payment of a debt owed by the deceased for old-age assistance was not payable out of the wrongful death funds.

That Cambria can no longer govern is clear from the amended statute. The decedent's Will now controls disbursement of the funds. In addition, the amended statute specifically provides that payment shall be made out of the moneys recovered for "claims against the estate." Finally, as the Government brought out on oral argument the amended statute required further legislative amendment in 1969, to establish that decedents were not liable for state succession taxes.

Since they had both rights in the cause of action and in the direction of the proceeds, the Court concludes that plaintiff's decedents under Connecticut law held "property" at the time of their deaths which must be included in their gross estates under § 2033.

"Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations, 'it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments.'" United States v. Correll, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967).

Accordingly, summary judgment is granted in each case for the defendant.

So ordered.