[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
This case is now before the Court for decision on the motion for summary judgment filed by defendants Donald DiBianco, a certified EMT-firefighter, and his municipal employer, the First Fire Taxation District of the City of West Haven ("Fire District"), dated February 7, 2002. In their motion, the defendants claim that they are entitled to judgment as a matter of law on two grounds. First, they claim that there is no genuine question of material fact that the plaintiff, despite filing proper notice of her intention to commence this action within six months of the accrual of her underlying cause of action, as required by General Statutes § 7-308, failed to satisfy the additional statutory requirement of presenting the demand, claim or claims upon which this CT Page 9910 action is founded to the municipal defendant, through the town clerk or other corresponding town official, at least thirty days before commencing this action. Second, they claim that the plaintiff's claims against them are barred by the doctrine of qualified governmental immunity since all of defendant DiBianco's alleged acts of negligence, as described in the plaintiff's complaint and supported by the evidence presented on this motion, took place in the performance of his discretionary, governmental duties as an EMT-firefighter. The defendants have supported their Motion with two Memoranda of Law and affidavits from three persons: defendant DiBianco and fellow Fire District officers or officials Timothy Ferrucci, a lieutenant firefighter, and Fire Commissioner Stephen Dargan.
The plaintiff has opposed the defendants' motion on several grounds. As for the defendants' claim that she failed to satisfy the "demand requirement" of General Statutes § 7-308 by not presenting the town clerk with a separate document called a "demand" or "claim," she argues: first, that the statute does not contemplate the filing of two separate documents called a "notice" and a "demand" or "claim," but rather the filing of a single document, giving notice of intent to commence an action based upon a particular claim or cause of action, which satisfies two different timing requirements as to the date of its filing or presentation; and second, that even if the statute does contemplate the filing of separate documents, her detailed "notice" of intention to commence this action, which contained a complete description of her present claim and was presented to the town clerk more than thirty days before this action was commenced, fully satisfied both statutory requirements in this case.
As for the defendants' claim of qualified governmental immunity, the plaintiff responds: first, that the negligence of defendant DiBianco, as she has alleged and sought to prove it on this motion, took place in the performance of the purely ministerial duty of driving a motor vehicle with reasonable care, which is the unavoidable duty of each and every driver upon our public roads and highways, including the operators of emergency vehicles; and second, that even if defendant DiBianco's alleged negligence took place in the performance of discretionary, governmental duties, she was a member of a small, readily identifiable class of potential victims of his negligence who were placed in imminent risk of harm by such conduct. The plaintiff has supported her position on the defendants' motion with two memoranda of law and her own sworn affidavit as to the circumstances of the collision here at issue.
 I
"Summary judgment is a method of resolving litigation when the CT Page 9911 pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wilson v. New Haven,213 Conn. 277, 279 (1989) (Citations omitted). The burden of proof on a motion for summary judgment is on the moving party; Fogarty v. Rashaw,193 Conn. 442, 445 (1984); who must clearly show that there is no genuine dispute either as to the existence of one or more facts which, if established, would entitle him to judgment as a matter of law, or as to the nonexistence of one or more facts upon which his opponent's right to judgment materially depends.
In deciding a motion for summary judgment, the trial court must employ the same standard it would use in deciding a motion for a directed verdict. Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994). In Connecticut, the direction of a verdict is only "justified if upon the evidence the jury could not reasonably and legally have reached any other conclusion than that embodied in the verdict as rendered." Bernardo v.Hoffman, 109 Conn. 158, 159 (1929). Where the moving party challenges the sufficiency of the non-movant's evidence to support his claim or cause of action, the question presented for decision is whether that evidence, when viewed in the light most favorable to the non-movant, is reasonably capable, if credited, of sustaining a verdict in his favor. United OilCo. v. Urban Redevelopment Commission, 158 Conn. 364, 380 (1969).
Whether or not there is a "genuine issue" as to any "material fact" is a two-part inquiry. The first question to be answered is whether or not the fact as to which the moving party claims there is no genuine issue is indeed a "material fact" that is, "a fact which will make a difference in the result of the case[.]" Yanow v. Teal Industries, Inc., 178 Conn. 262,268 (1979). Such a fact, to reiterate, is one whose demonstrated existence or nonexistence would conclusively establish the moving party's right to judgment as a matter of law.
Once it is established that a particular fact is "material" to the outcome of the case, it must be determined whether or not there is any "genuine issue" as to that fact. This, in turn, depends on the nature and quality of the parties' competing proof.
 II
The defendants' initial claim on this motion is that they are entitled to judgment as a matter of law because there is no genuine issue of material fact that the plaintiff failed to satisfy the "demand requirement" of General Statutes § 7-308. This claim is based upon the following portion of Section 7-308:
CT Page 9912 No action or proceeding instituted pursuant to the provisions of this section shall be prosecuted or maintained against the municipality or fireman unless at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the clerk or corresponding officer of such municipality. No action for personal injuries or damages to real or personal property shall be maintained against such municipality and fireman unless such action is commenced within one year after the cause of action therefor has arisen nor unless notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk or corresponding officer of such municipality and with the fireman within six months after such cause of action has accrued.
The defendants read this language to impose two separate presuit filing requirements upon any person who wishes to pursue an action against a negligent fireman and his municipal employer under the statute. Chronologically, though not in the order listed in the statute, the first of these requirements is the "notice requirement," which mandates' that "[n]o action for personal injuries or damages to real or personal property shall be maintained against such municipality and fireman unless . . . notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk or corresponding officer of such municipality and with the fireman within six months after such cause of action has accrued." The obvious purpose of this requirement, as of most statutory notice requirements, is to warn potential defendants that they are facing possible civil liability, to draw their attention to the specific incident which is claimed to give rise to such liability, and thus to enable them to gather evidence about that incident while the evidence is fresh so that they might prepare their defense and/or attempt to reach a settlement before suit is filed.
The second filing requirement allegedly imposed by Section 7-308 is the so-called "demand requirement," which mandates that:
 No action . . . shall be prosecuted or maintained against the municipality or fireman unless at least thirty days have elapsed since the demand, claim or claims upon which such action is founded were presented to the clerk . . . of such municipality.
CT Page 9913 According to the defendants, the "demand, claim or claims" which must be "presented" to the town clerk to satisfy this requirement is necessarily a different document, to be filed at a different time and in a different manner, than the abovedescribed "notice" of intention to commence suit. This, they claim, is so because the requirement is listed in a different sentence of the statute, the document mentioned in that sentence is referred to as a "demand, claim or claims" rather than as a "notice," and the referenced "demand, claim or claims," unlike the statutory "notice," need only be presented to the town clerk, not to the fireman himself. Had the "demand requirement" and the "notice requirement" been one and the same, the defendants argue, the legislature could easily have so indicated, as by referring to the "demand, claim or claims" as a "notice," or otherwise describing the "demand, claim or claims" and the "notice" as if they were a single document. Because it did not, the defendants insist that the statute imposed two separate and distinct pre-suit filing requirements, and thus that the instant action must fail as a matter of law since the plaintiff, though she filed a timely notice of intention to commence this action, never presented a separate statutory "demand, claim or claims" to the appropriate town official at least thirty days before commencing the action.
The defendants find support for their argument in the case of Shaw v.Industrial Safety Supply Co., 23 Conn. Sup. 149 (1962), where Judge Lugg of the Court of Common Pleas sustained a demurrer to a count of a complaint in which the plaintiff had sued for damages under Section 7-308
without alleging that he had ever presented a demand or claim to the town clerk of the defendant municipality. In so ruling, the Shaw Court rejected the plaintiff's claim that he had satisfied the "demand requirement" of the statute by duly filing his statutory notice of intention to commence suit more than thirty days before he brought the claim in question. On that score, the Court reasoned as follows:
Ground (c) of this demurrer points out the lack of allegation that such demand or claim was so presented. The plaintiff attempts to pass off this attack by stating that paragraph 6 of his second count sets forth that claim was made upon the town of Simsbury. It does nothing of the kind. It is an allegation that notice was given under the statute. The latter requirement is contained in the sentence following the one quoted and is entirely separate and distinct therefrom. It resembles the notice which is set out in the laws authorizing suits for damages caused by defective highways. General Statutes §§ 13-11, 13-87. Neither of these contain the additional requirement of claim or demand, but § 7-465
CT Page 9914 (providing for assumption of municipalities of liability for damages caused by employees) contains both, as does the section here in issue, § 7-308. The two older highway statutes have been the subject of a wealth of construction, but the other two are so recent that pertinent case law is limited. Obviously, however, the addition of the requirement of claim or demand means something, and that something is separate and distinct from the requirement of notice. No statutory provision is to be regarded as superfluous. State v. Cambria, 137 Conn. 604, 610 (1951). No part of a legislative enactment is to be treated as insignificant and unnecessary, but courts must presume that the legislature had a purpose for every sentence, clause or phrase in a statute. Fox v. Zoning Board of Appeals, 146 Conn. 70, 73 (1958); McAdams v. Barbieri, 143 Conn. 405, 419 (1956). They must also presume that the General Assembly did not intend to enact useless legislation. Bergner v. State, 144 Conn. 282, 287 (1957).
Shaw, supra, 23 Conn. Sup. At 152-53.
There is surely no question that the Shaw decision directly supports the defendants' argument on this motion. Hence, though this Court is not bound by it, it must respectfully consider its logic in making its own decision in this case. This, however, is precisely the problem withShaw, for it proposes no logical reason why the legislature might have wished to establish separate notice and demand requirements, much less any basis for the defendants' resulting argument that those requirements can never be satisfied by the filing of a single document.
On the first point, the Shaw Court simply states the following conclusion: "Obviously, . . . the addition of the requirement of claim or demand means something." Id. Never, however, does the Court even guess at, much less attempt to explain, what that "something" might be. On the second point, the Shaw Court did not actually state that a single document could not satisfy both the "notice" and "demand requirements" of the statute. Instead, it simply stated that, as alleged in the count before it, the single document filed by the plaintiff did not satisfy both requirements because it was described only as a "notice," not a "demand." Hence, though it never offered any description of the difference between a notice of intention to commence an action, on the one hand, and a claim or demand, on the other, it left open the distinct possibility that a single document could satisfy both requirements on the facts of a given case. CT Page 9915
This Court has come to the conclusion that, although the language of Section 7-308 imposes two separate pre-suit filing requirements on all would-be claimants thereunder, the essential distinction between them isnot that each requires the filing of a different document, but that each requires the filing of a single document to meet two different filing deadlines. The Court reaches this conclusion for the following reasons.
First, there is no reason whatsoever for requiring a claimant under Section 7-308 to give a municipality double notice of his intent to commence a lawsuit against it. That, however, is exactly what would be required if two separate documents entitled "notice" and "demand" or "claim" had to be filed with the municipality to satisfy the statute.
The requirements for the statutory notice are set forth in detail in Section 7-308. To satisfy the statute, the notice must state an "intention to commence" an "action for personal injuries or damages to real or personal property" and indicate "the time when and the place where the damages were incurred or sustained." Id. By any reasonable definition, any "notice" containing such information about an impending civil damages action necessarily describes the "claim upon which such action is founded." Id. Hence, the later presentation of a separate document called a "demand" or "claim" would do nothing for a potential municipal defendant that had not already been accomplished by the filing of the statutory "notice." The legislature can hardly be supposed to have put both requirements in the statute for no purpose.
Second, the two statutory requirements here at issue would lose their apparent redundancy if, instead of mandating the double filing of separate but identical documents, they were understood to establish two complementary timing requirements for the filing of a single document giving notice of intention to commence an action founded upon a particular legal claim. So understood, what the Court and counsel have thus far referred to as the "notice requirement" would more accurately be described as the "six-month notice requirement," for it would require that a potential plaintiff give notice of his intention to commence a particular lawsuit — for particular damages, arising from a particular event or incident occurring at a particular time and place — within six months of the accrual of his underlying cause of action. Such a requirement, like most statutory notice requirements, would afford the municipality and the fireman the opportunity to conduct an effective investigation of the claim within the first six months after it accrued, or shortly thereafter, and on that basis to prepare their defense to the impending action and/or attempt to settle it before suit is filed. CT Page 9916
The so-called "demand requirement," by contrast, would better be described as the "thirty-day delay requirement." Instead of imposing any additional notice obligations upon the claimant, it would simply require the claimant to wait. at least thirty days after filing his notice of intention to commence the action before actually commencing his action.
So understood, the "thirty-day delay" requirement would afford an important layer of additional protection to any municipality that truly wished to take advantage of the claimant's statutory notice by conducting a prompt pre-suit investigation of the claimant's claim. If a thirty-day delay between notice and commencement of suit were not mandated by the statute, a claimant could, at least in theory, file his notice on one day and commence his lawsuit' on the next. If that occurred, then of course there would be no opportunity for presuit investigation or settlement, and a significant benefit of the "six-month notice requirement" would be irreparably lost. The Court concludes that this construction of the statute — interpreting the "thirty-day delay requirement" as an adjunct to, and a guarantor of the effectiveness of, the "six-month notice requirement" — is far more sensible than that advanced by the Shaw Court and the defendants in this case.
In light of the foregoing interpretation, the Court finds that there was no failure by this plaintiff to meet the requirements of Section 7-308. Her statutory notice detailing the nature of her claims and the time when and the place where her resulting damages were incurred or sustained was timely filed within six months of the date of the defendants' alleged negligence and the accrual of her cause of action. This action, moreover, was not commenced for more than 30 days after the notice was duly presented to the West Haven town clerk.
As an alternative basis for denying the defendants' Motion, the plaintiff has argued that the detailed, five-page notice she filed in this case was more than sufficient to meet both the "demand" and the "notice requirements" of the statute, if they are not in fact identical. Having inspected that notice, this Court agrees.
Entitled "Notice Recorded Pursuant to Section 7-308 of the Connecticut General Statutes of Claimant's Intention to Commence An Action And Claim Money Damages," the notice named all parties the plaintiff intended to sue, including defendant DiBianco and the Fire District, described her claims of negligence against each such party in detail, listed all of the injuries she claimed to have suffered as a result of such negligence, identified all of the losses she allegedly sustained as a result of such injuries, and announced her intention to seek money damages for her injuries and losses. As such, the notice clearly and expressly stated all of the elements of the plaintiff's "claims" against the firemen and the CT Page 9917 municipality. The Court thus concludes that the defendants are not entitled to summary judgment because the plaintiff, by filing her statutory notice of intention to commence this action, fully satisfied the "demand requirement" of Section 7-308 as well.
 III
The defendants' second major claim on this motion is that defendant DiBianco, and thus the Fire District as his principal and alleged indemnitor, are immune from suit on the ground of qualified governmental immunity because defendant DiBianco was allegedly performing a discretionary, governmental duty at the time of his challenged conduct. The Court rejects this argument for two basic reasons.
First, the text of General Statutes § 7-308 explicitly states that "[g]overnmental immunity shall not be a defense in any action under this section." Second, even if governmental immunity could somehow be asserted to defend against a claim under Section 7-308, that defense would not apply to the conduct of defendant DiBianco in this case, for such conduct involved only the performance of non-discretionary, ministerial duties, to which the defense of qualified governmental immunity does not apply.
The defendants assert that at the time of the subject collision, defendant DiBianco was engaged in the performance of a discretionary, governmental duty because he then was operating an emergency vehicle, transporting an injured person to the hospital. The defendants recognize that a municipal employee's operation of a motor vehicle in the performance of his employment duties ordinarily constitutes the performance of a ministerial duty, because the employee, like any other motor vehicle operator, is usually bound to follow all the regular rules of the road. They argue, however, that an employee's operation of an emergency vehicle in an emergency situation is an exception to that rule, for in such situations, the operators of emergency vehicles are authorized by statute not to follow all the regular rules of the road. Where, then, as here, the defendants argue, a municipal employee is claimed to have been negligent in the operation of an emergency vehicle by violating regular rules of the road which, in the circumstances presented, he had the statutory discretion to ignore, he is entitled to qualified governmental immunity for his alleged negligence.
In making this argument, the defendants rely, in particular, on the following language from General Statutes § 14-283:
(a) "Emergency vehicle", as used in this section, means any ambulance or emergency medical service organization vehicle responding to an emergency call, CT Page 9918 any vehicle used by a fire department or by any officer of a fire department while on the way to a fire or while responding to an emergency call but not while returning from a fire or emergency call, . . .
 (b) The operator of any emergency vehicle may . . . (2) proceed past any red light or stop signal or stop sign, but only after slowing down or stopping to the extent necessary for the safe operation of such vehicle, (3) exceed the posted speed limits or other speed limits imposed by or pursuant to section 14-218a
or 14-219 as long as he does not endanger life or property by so doing, and (4) disregard statutes, ordinances or regulations governing direction of movement or turning in specific directions.
 (c) The exemptions herein granted shall apply only when an emergency vehicle is making use of an audible warning signal device, including but not limited to a siren, whistle or bell which meets the requirements of subsection (f) of section 14-80, and visible flashing or revolving lights which meet the requirements of sections 14-96p and 14-96q, and to any state or local police vehicle properly and lawfully making use of an audible warning signal device only.
 (d) The provisions of this section shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property.
According to the defendants, this statute gave defendant DiBianco the discretion, in responding to the emergency that confronted him on the morning of October 5, 1999, to drive his ambulance through the intersection where the collision occurred. Inside the ambulance receiving treatment at the time was an 8-year-old girl, Alexis Osborn, who had been struck and knocked to the ground by a car. Because it was believed by responding EMTs and paramedics that Miss Osborn might have sustained internal injuries, it was determined that she should be transported to the nearest hospital by ambulance, with its lights and sirens activated. Accordingly, the defendants argue, once his lights and sirens were activated, defendant DiBianco, as the driver of the ambulance, became authorized by statute, in the exercise of his discretion, to take two actions upon which the claims against him are based: proceed through a red light and operate at unreasonable speed. Therefore, he is allegedly immune from suit under the doctrine of qualified governmental immunity. CT Page 9919
As Judge Fracasse pointed out in Green v. City of New Haven,1994 Conn. Sup. 7112 (Judicial District of New Haven, July 14, 1994), however, the operator of an emergency vehicle has no discretion under Section 14-283 to operate his vehicle unsafely, without due regard for the rights and safety of others. To the contrary, the statute expressly provides that, "The provisions of this section shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property." C.G.S. § 14-283 (d). Accordingly, the duty to operate even an emergency vehicle with due care is a ministerial duty which a fireman has no discretion not to perform. Where, then, as here, it is alleged that an emergency vehicle operator has operated an emergency vehicle in violation of his statutory duty to drive with due regard for the safety of other persons, he cannot be granted summary judgment based on a claim of governmental immunity if the plaintiff presents competent evidence tending to establish breach of that duty.
The plaintiff has made such a showing in this case by presenting her own sworn affidavit as to the circumstances of the collision. She avers that on that day, upon driving her van into the intersection of South Frontage Road and Church Street South in New Haven under a steady green light, she saw defendant DiBianco's ambulance suddenly appear, traveling directly into her path at a high rate of speed. The ambulance, she reports, did not stop or swerve when her van appeared, but just kept proceeding into the path of her van until the two vehicles collided.
In the Court's view, this affidavit tends to establish that defendant DiBianco breached his duty to drive the ambulance "with due regard for the safety of all persons and property." C.G.S. § 14-283 (d). It does so, more particularly, by proving that he drove the ambulance through a red light under circumstances not excused by C.G.S. § 14-283 (b). Subsection (b)(2) of Section 14-283, to reiterate, provides in relevant part that:
 (b) The operator of any emergency vehicle may . . (2) proceed past any red light . . ., but only after slowing down or stopping to the extent necessary for the safe operation of such vehicle [or] (3) exceed the posted speed limits or other speed limits imposed by or pursuant to section 14-218a [Traveling unreasonably fast] or section 14-219 [Speeding] as long as he does not endanger life or property by so doing[.]
(Emphasis added.) So stating, the statute not only establishes the limited circumstances in which the operators of emergency vehicles may CT Page 9920 violate the red-light statute, General Statutes § 14-299, but confirms by necessary implication that any such operator who "proceeds past a red light without "slowing down or stopping to the extent necessary for the safe operation of such vehicle" both violates the statute and breaches his duty to drive with due care for the safety of all persons and property.
Because the plaintiff's affidavit suggests that defendant DiBianco proceeded through a red light at high speed on the morning of October 5, 1999, without slowing down or stopping to the extent necessary for the safe operation of the ambulance, it raises a genuine issue of material fact as to whether he violated Section 14-299, and thus whether he breached his ministerial duty to operate the ambulance with due regard for the safety of all persons and property. Accordingly, the defendants' motion for summary judgment based upon this argument must also be DENIED.
 CONCLUSION
For all of the foregoing reasons, the Court hereby ORDERS that the defendants' Motion For Summary Judgment be DENIED.
IT IS SO ORDERED this 2nd day of August, 2002.
 __________________ J. Michael R. Sheldon